IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

A1 PROCUREMENT, LLC,
UNITED STATES OF AMERICA,

Plaintiffs,

v.

THERMCOR, INC;
WALTER L. DIXON;
WILLIAM M. BOLEAN;
RONALD L. DIXON;
DALE BARNES;

Defendants.

Civil Action No. **11-23978**

CIV-HOEVELER

COMPLAINT FOR VIOLATION
OF FEDERAL FALSE CLAIMS ACT,
31 U.S.C. §3729, et seq.

JURY TRIAL DEMANDED

FILED IN CAMERA AND UNDER SEAL

FILED by ___ A15 ___ D.C.

NOV 03 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

## QUI TAM COMPLAINT

RELATOR, A1 PROCUREMENT, LLC ("A1") brings this *qui tam* action in the name of the United States of America, by and through its undersigned attorney Derrick Storms, Esq. against THERMCOR, INC; WALTER L. DIXON; WILLIAM M. BOLEAN; RONALD L. DIXON; and DALE BARNES("Defendants"), pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.

## INTRODUCTION

1. This is an action by *qui tam* Relator A1, on behalf of the United States, against Defendants, to recover penalties and damages arising from false statements and claims regarding Defendants falsely and fraudulently misrepresenting Service-Disabled Veteran-Owned Small Businesses ("SDVOSB") status in order to bid on, obtain award, and payment for United States federal government contracts.

2. A1 is the original source of, and has direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the Government before filing this action.

1

3. From at least 2007, Defendants knowingly made, used, ratified, authorized, conspired, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of the FCA. Defendants knowingly mislead the United States Coast Guard ("Coasts Guard") and United States Navy ("Navy") to enter into contracts set-aside for SDVOSB by falsifying statements that Thermcor, Inc was an SDVOSB concerns and eligible to receive award for SDVOSB set-aside contracts and award preference for non-SDVOSB contracts. A1, the Coast Guard, the Navy, the public fisc, valid SDVOSB firms, and the integrity of the federal procurement process have been damaged as a result of Defendants false and fraudulent actions.

## PARTIES

4. Plaintiffs are A1 and the United States of America.

5. A1 is a SDVOSB concern that suffered damages from Defendants false and fraudulent claims.

6. The Coast Guard and the Navy are armed forces of the United States, responsible for protecting the maritime, land based, and aviation economy, environment, and defending our borders. The Coast Guard and Navy are the contracting agencies for the acquisitions at issue in this action.

7. Defendant Thermcor, Inc ("Thermcor") is a Virginia corporation with a mailing address of 2601 Colley Ave Norfolk, Virginia 23517.

8. Thermcor, Inc has never been an eligible SDVOSB concern.

9. Defendant Mr. Walter L. Dixon is a Virginia resident, and he is the majority owner of Thermcor and Thermcor's President and Chief Executive Officer.

10. Defendant Mr. Walter L. Dixon has never been a Service Disabled Veteran ("SDV").

11. Defendant Mr. William M. Bolean is a Virginia resident, and he is Thermcor's Vice President and Chief Financial Officer.

12. Defendant Mr. Ronald L. Dixon is a Virginia resident, and he is Thermcor's Vice President and Chief Operating Officer.

13. Defendant Mr. Dale Barnes is a Virginia resident, and he is an employee at Thermcor.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1345.

15. This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), because all Defendants knowingly made, used, or caused or conspired to cause, a false record or statement material to a false or fraudulent claim on several United States Federal Government websites;

16. Venue is proper in the Southern District of Florida under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because Defendants have committed acts prescribed by 31 U.S.C. § 3729 in the District.

## STATUTORY AND REGULATORY FRAMEWORK

### The False Claims Act

17. The FCA, 31 U.S.C. §§ 3729-3733, provides for the award of treble damages and civil penalties for, inter alia, knowingly causing the submission of false or fraudulent claims for payment to the United States Government , or knowingly using a false record or statement material to a false claim. 31 U.S.C. § 3729(a)(1)(2008) and (a)(1)(B)(2009). During the relevant time period, the FCA provided, in pertinent part, that any person who:

> *(a)(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States of the United States a false or fraudulent claim for payment or approval; [or]*
>
> *(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;[1]*

---

[1] The False Claims Act was amended pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of 2009 ("FERA"), enacted May 20, 2009. Section 3729(a)(1)(B) was formerly Section 3729(a)(2), and is applicable to this case by virtue of Section 4(f) of FERA, while Section 3279(a)(1) of the statute prior to FERA, and as amended in 1986, remains applicable here.

*is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because of the act of that person. . . .*

\* \* \* \*

*For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information, (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.*

31 U.S.C. §3729(a)(1)(2008) and (a)(1)(B)(2009).

18. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47099, 47103 (1999), the FCA civil penalties were adjusted to a range of $5,500 to $11,000 per false claim for violations occurring on or after September 29, 1999.

19. Pursuant to the Small Business Jobs Act of 2010, Pub. L. No. 111-240 § 1311-1347 (September 27, 2010) part IV Small Business Size and Status Integrity, 15 U.S.C. § 632 all defendants liability and damages shall be determined and calculated based on an irrebutable presumption of loss to the United States based on the total amount expended on each contract and grant where it is established that the defendants willfully sought and received the award by misrepresentation. The Small Business Size and Status Integrity provision, 15 U.S.C. § 632 provides, in pertinent part:

*(1) GENERAL.—In every contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract, subcontract, cooperative agreement cooperative research and development agreement, or grant whenever it is established that a business concern other than a small business willfully sought and received the award by misrepresentation.*

4

*(2)   DEEMED CERTIFICATIONS.—The following actions shall be deemed affirmative, willful, and intentional certifications of small business size and status:*

*(A)   Submission of a bid or proposal for a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement reserved, set aside, or otherwise classified as intended for award to small business concerns.*

*(B) Submission of a bid or proposal for a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement which in any way encourages a Federal agency to classify the bid or proposal, if awarded, as an award to a small business concern.*

*(C) Registration on any Federal electronic database for the purpose of being considered for award of a Federal grant, contract, subcontract, cooperative agreement, or cooperative research agreement, as a small business concern.*

20. The FCA allows any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery. The FCA requires that the Complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

**The Federal Government's SDVOSB Set-Aside Program**

21. The Veterans Benefits Act of 2003 (Public Law 108-83) established a procurement program for SDVOSB concerns.  The program sets aside Federal contracts to SDVOSB concerns, and gives preferences to SDVOSB concerns in non-SDVOSB contracts. To be eligible for SDVOSB set-aside contracts—or to register on a Federal Website as an SDVOSB concern for procurement preferences in non-SDVOSB set-aside contracts— a business must be at least 51% owned and controlled by an individual who is considered by the Government as a Service-Disabled Veteran.

22. The Government relies on SDVOSB concerns to self-represent that they are eligible SDVOSB concerns. The applicable SDVOSB regulations are provided in pertinent part in ¶¶ 23 through 28 below.

23. **Subpart A—Definitions for the Service-Disabled Veteran-Owned Small Business Concern Program. 13 C.F.R. § 125.8 What definitions are important in the Service-Disabled Veteran-Owned (SDVO) Small Business Concern (SBC) Program?**

*(a) Contracting Officer has the meaning given such term in section 27(f)(5) of the Office of Federal Procurement Policy Act (41 U.S.C. 423(f)(5)).*

*(b) Interested Party means the contracting activity's contracting officer, the SBA or any concern that submits an offer for a specific SDVO contract.*

*(c) Permanent caregiver is the spouse, or an individual, 18 years of age or older, who is legally designated, in writing, to undertake responsibility for managing the well-being of the service-disabled veteran, to include housing, health and safety. A permanent caregiver may, but does not need to, reside in the same household as the service-disabled veteran. In the case of a service-disabled veteran lacking legal capacity, the permanent caregiver shall be a parent, guardian, or person having legal custody. There may be no more than one "permanent caregiver" per service-disabled veteran.*

*(d) Service-Disabled Veteran with a Permanent and Severe Disability means a veteran with a service-connected disability that has been determined by the U.S. Department of Veterans Affairs to have a permanent and total disability for purposes of receiving disability compensation or a disability pension.*

*(e) Service-Connected has the meaning given that term in section 101(16) of Title 38, United States Code.*

*(f) Service-disabled veteran is a veteran with a disability that is service-connected.*

*(g) SBC owned and controlled by service-disabled veterans (also known as a Service-Disabled Veteran-Owned SBC) is a concern—*
*(1) Not less than 51% of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51% of the stock of which is owned by one or more service-disabled veterans;*

*(2) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a service-disabled veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran; and*

*(3) That is small as defined by § 125.11.*

24. **Subpart B—Eligibility Requirements for the SDVO SBC Program 13 C.F.R. § 125.9. Who does SBA consider to own an SDVO SBC?**

A concern must be at least 51% unconditionally and directly owned by one or more service-disabled veterans. More specifically:

*(a) Ownership must be direct. Ownership by one or more service disabled veterans must be direct ownership. A concern owned principally by another business entity that is in turn owned and controlled by one or more service-disabled veterans does not meet this requirement. Ownership by a trust, such as a living trust, may be treated as the functional equivalent of ownership by service-disabled veterans where the trust is revocable, and service-disabled veterans are the grantors, trustees, and the current beneficiaries of the trust.*

*(b) Ownership of a partnership. In the case of a concern which is a partnership, at least 51% of every class of partnership interest must be unconditionally owned by one or more service-disabled veterans. The ownership must be reflected in the concern's partnership agreement.*

*(c) Ownership of a limited liability company. In the case of a concern which is a limited liability company, at least 51% of each class of member interest must be unconditionally owned by one or more service-disabled veterans.*

*(d) Ownership of a corporation. In the case of a concern which is a corporation, at least 51% of the aggregate of all stock outstanding and at least 51% of each class of voting stock outstanding must be unconditionally owned by one or more service-disabled veterans.*

25. **Subpart C—Contracting with SDVO SBCs.  13 C.F.R. § 125.14.  What are SDVO contracts?**

*SDVO contracts are contracts awarded to an SDVO SBC through a sole source award or a set-aside award based on competition restricted to SDVO SBCs.*

26. **13 C.F.R. § 125.15 What requirements must an SDVO SBC meet to submit an offer on a contract?**

*(a) Representation of SDVO SBC status. At the time an SDVO SBC submits its offer on a specific contract, it must represent to the contracting officer that:*

*(1) It is an SDVO SBC;*
*(2) It is small under the NAICS code assigned to the procurement;*
*(3) It will meet the percentage of work requirements set forth in § 125.6*

27. **13 C.F.R. § 125.6 Prime contractor performance requirements (limitations on subcontracting).**

*(a) In order to be awarded a full or partial small business set-aside contract, an 8(a) contract, or an unrestricted procurement where a concern has claimed a 10 percent small disadvantaged business (SDB) price evaluation preference, a small business concern must agree that:*

*(1) In the case of a contract for services (except construction), the concern will perform at least 50 percent of the cost of the contract incurred for personnel with its own employees.*

28. **Subpart E—Penalties and Retention of Records.  13 C.F.R. § 125.29 What penalties may be imposed under this part?**

*(a) Suspension or debarment. The Agency debarring official may suspend or debar a person or concern pursuant to the procedures set forth in part 145 of this chapter. The contracting agency*

*debarring official may debar or suspend a person or concern under the Federal Acquisition Regulation, 48 CFR Part 9, subpart 9.4.*

*(b) Civil penalties. Persons or concerns are subject to severe civil penalties under the False Claims Act, 31 U.S.C. 3729–3733, and under the Program Fraud Civil Remedies Act, 331 U.S.C. 3801–3812, and any other applicable laws.*

*(c) Criminal penalties. Persons or concerns are subject to severe criminal penalties for knowingly misrepresenting the SDVO status of a SBC in connection with procurement programs pursuant to section 16 of the Small Business Act, 15 U.S.C. 645, as amended; 18 U.S.C. 1001; and 31 U.S.C. 3729–3733. Persons or concerns also are subject to criminal penalties for knowingly making false statements or misrepresentations to SBA for the purpose of influencing any actions of SBA pursuant to section 16(a) of the Small Business Act, 15 U.S.C. 645(a), as amended, including failure to correct "continuing representations" that are no longer true.*

## FACTS

29. Thermcor has never complied with the Federal Government's SDVOSB program requirements set forth in ¶¶ 23 through 28.

30. The individual Defendants have never complied with the Federal Government's SDVOSB program requirements set forth in ¶¶ 23 through 28.

31. The majority owner of Thermcor, Mr. Walter L. Dixon has never been a Service Disabled Veteran.

32. On August 17, 2011, the Coast Guard informed A1 that it intended to award Sol. No.: HSCG80-11-Q-P45MY7—a SDVOSB set-aside contract to Thermcor.

33. On August 18, 2011, at 4:00 p.m. EST, A1's President Adrian Batlle called Thermcor at (757) 622-7881 and spoke with Mr. Walter L. Dixon directly.  Mr. Batlle requested proof of Mr. Walter Dixon's service disability records from the Department of Veterans Affairs.  Mr. Dixon admitted that he was not a Service Disabled Veteran.  See, **Exhibit 1** (Affidavit of Mr. Adrian Batlle.)

34.  On August 18, 2011, Mr. Batlle discovered that Thermcor misrepresented its SDVOSB status on the United States Federal Government's Central Contractor Registration ("CCR") website; the United States Federal Government's Online Representations and Certifications Applications ("ORCA") website; and the United States Federal Government's Federal Business Opportunities ("FBO") website . See, **Exhibit 1** (Affidavit of Mr. Adrian Batlle.)

35. On August 18, 2011, Mr. Batlle also discovered that Thermcor had been awarded US$23,835,783.00 in United States Federal Government Contracts by falsely and fraudulently misrepresenting Thermcor's SDVOSB status.

36. Knowing that Thermcor was not an eligible SDVOSB and was fraudulently misrepresenting their SDVOSB in order to obtain SDVOSB set-aside contract and obtain preference for non-SDVOSB contracts, on August 19, 2011 A1 filed a SDVOSB eligibility protest with the Small Business Administration ("SBA") for Sol. No.: HSCG80-11-Q-P45MY7.  See, **Exhibit 1** (Affidavit of Mr. Adrian Batlle.)

37.  On September 13, 2011 Thermcor emailed the SBA and withdrew their offer on Sol. No.: HSCG80-11-Q-P45MY7.

38. Because Thermcor withdrew their offer for Sol. No.: HSCG80-11-Q-P45MY7, Thermcor was no longer an interested party; consequently, the SBA withdrew the protest against Thermcor. See, **Exhibit 1** (Affidavit of Mr. Adrian Batlle.)

39. The Coast Guard and Navy relied on Thermcor's CCR and ORCA, self-representations prior to awarding SDVOSB set-aside contracts to Thermcor.

40. The Coast Guard and Navy relied on the Thermcor's FBO self-representations prior to awarding SDVOSB set-aside contracts to Thermcor.

41.  The Coast Guard and Navy relied on the Thermcor's SDVOSB representations contained in Defendants proposals submitted to these agencies.

42. The Coast Guard and Navy had no way of knowing that Thermcor was falsely and fraudulently misrepresenting its SDVOSB status.

43. Pursuant to Public Law 108-83,  FAR 19.11, and the Coast Guard's and Navy's policy, these agencies relied on the Defendant's CCR, ORCA, and FBO SDVOSB self-representations prior to awarding non-SDVOSB contracts to Thermcor because these agencies provide special preferences to SDVOSB firms—even when awarding non-SDVOSB contracts.  These agencies had no way of knowing that the Defendants were falsely and fraudulently representing their SDVOSB status.

44. Thermcor would not be eligible to receive award for any Coast Guard or Navy contracts had the agency and/or contracting officer in charge been aware of the Thermcor's false and fraudulent SDVOSB representations.

45. Thermcor would not pass a contracting officer's responsibility determination prior to each award if the Contracting Officer had known Defendants' were misrepresenting their SDVOSB status.

46. During the relevant time period Thermcor and all individual Defendants submitted false and fraudulent statements regarding their SDVOSB status in CCR, ORCA, FBO, and the proposals they submitted to the Federal Government; and/or conspired to misrepresent, authorize and ratify their SDVOSB status in CCR, ORCA, and FBO and the proposals they submitted to the Federal Government.

47. At the date this Complaint was filed Thermcor continues to misrepresent its SDVOSB status to the United States Federal Government on CCR, ORCA, and FBO

**United States Federal Government Contracts Awarded to Thermcor While Thermcor Falsely and Fraudulently Misrepresented Thermcor's SDVOSB status.**

48. On August 18, 2011, through direct and independent investigation, Mr. Adrian Batlle identified sixty seven (67)[2] United States Federal Government contracts awarded and paid to Thermcor, while Thermcor; Walter L. Dixon; William M. Bolean; Ronald L. Dixon; and Dale Barnes falsely and fraudulently misrepresented or conspired to misrepresent, authorize and ratify Thermcor's status as a SDVOSB concern.  Specifically, these federal government contracts include:

    1.  Sol. No.:HSCG8011QP45LE5, award date Sept. 1, 2011; award amount $2,600,000.00

    2.  Purchase order HSCG8011JP30K05; award date Sept. 23, 2011; award amount $29,128.00

    3.  Sol. No.: HSCG40-11-Q-61688; award date Sept. 8, 2011; award amount $59,588.00

    4.  Sol. No.: N4044211T3034; award date June 9, 2011; award amount $2,967,237.00

    5.  Sol. No.: HSCG80-11-Q-P45KA8; award date May 26, 2011; award amount $110,181.00

---

[2] In each federal contract, Defendants submitted multiple false claims and statements to the Federal Government in the form of multiple invoices, proposals, emails, and other documentation.

6.  Purchase order No.: HSCG8011PP45KA8:1; award date June 10, 2011, award amount $5,668.00

7.  Sol. No.: HSCG80-11-Q-P45Y99; award date Feb. 24 2011; award amount $22,207.00

8.  Purchase Order No.: HSCG80-11-P-P45Y99:2, award date March 9, 2011; award amount $4,766.00

9.  Purchase Order No.: HSCG80-11-P-P45Y99:3; award date March 15, 2011; award amount $8,402.00

10. Purchase Order No.: HSCG80-11-P-P45Y99:4; award date March 31, 2011; award amount $8,078.00

11. Purchase Order No.: HSCG80-11-P-P45Y99:5; award date April 20, 2011; award amount $3,691.00

12. Sol. No.: N4044210R3036; award date Oct. 13, 2010; award amount $2,835,039.00

13. Sol. No.: HSCG80-11-Q-P45HB6; award date June 2, 2011; award amount $127,454.00

14. Purchase Order No.: HSCG8011CP45HB6:1; award date Sept. 30, 2011; award amount $191.00

15. Sol. No.: D11PS19161; award date Sept. 14, 2011; award amount $50,547.00

16. Order No.: HSCG8011PP45XA6; award date July 14, 2011; award amount $4,373.00

17. Sol. No.: W9123610T0018; award date Sept. 13, 2011; award amount $94,094.00

18. Order No.: W9123610P0140:P00001; award date Dec. 5, 2010; award amount $19,402.00

19. Order No.: W9123610P0140:P00002; award date April 11, 2011; award amount $3224.00

20. Sol. No.: W9123610T0017; award date Sept. 7, 2010, award amount $159,426.00

21. Order No.: W9123610P0132:P00001; award date Oct. 14, 2010; award amount $7,026.00

22. Order No.: W9123610P0132:P00002; award date Dec. 5, 2010; award amount $22,880.00

23. Order No.: W9123610P0132:P00003; award date March 8, 2011; award amount $9,211.00

24. Order No.: Hscg8011PP45X84; award date Feb. 16, 2011; award amount $19,527.00

25. Sol. No.: W912CN11T0044; award date Jan. 12, 2011; award amount $87,221.00

26. Order No.: W911SF11P0053; award date Dec. 29, 2010; award amount $25,128.00

27. Order No.: W911SF11P0048; award date Dec. 10, 2010; award amount $10,573.00

28. Order No.: HSCG2711PDMLGB2; award date Dec. 3, 2010; award amount $20,939.00

29. Order No.: HSCG2910PDNC656; award date Sept. 14, 2010; award amount $8,969.00

30. Order No.: HSCG2910PDNC656; award date Sept. 3, 2010; award amount $13,586.00

31. Order No.: HSCG8010PP45MK4, award date June 21, 2010; award amount $6,959.00

32. Order No.: HSCG2910PDNC425; award date May 28, 2010; award amount $9,877.00

33. Order No.: HSCG2910PDNC425:1; award date June 15, 2010; award amount $4,744.00

34. Order No.: HSCG8010PP45FG5:1; award date May 26, 2010; award amount $1,260.00

35. Order No.: N4044210C3019; award date May 24, 2010; award amount $2,885,039.00

36. Sol. No.: N4044210R3002; award date Dec. 3, 2009; award amount $2,285,039.00

37. Order No.: N4044210C3005:P00001; award date March 3, 2010; award amount $4,775.00

38. Order No.: 3680806009; award date Feb. 10, 2009; award amount $534, 000.00

39. Order No.: HSCG2709P3ML652; award amount Sept. 21, 2009; $5,475.00

40. Sol. No.: N4044209R3024; award date May 28, 2009; award amount $2,819,559.00

41. Sol. No.: N4044209R3004; award date Feb. 3, 2009; award amount $2,960,222.00

42. Order No.: DOCEA133M09SE1089; award date Jan. 21, 2009; award amount $6,775.00

43. Order No.: N6279308MA116; award date Sept. 16, 2008; award amount $36,494.00

44. Order No.: N6279308MA116:P00001; award date Oct. 121, 2008; award amount $1,564.00

45. Sol. No.: N4044208R3036; award date Sept. 19, 2008; award amount $2,900,000.00

46. Sol. No.: N4044208R3022; award date March 27, 2008; award amount $2,000,000.00

47. Order No.: N4044208C3022:00001; award date May 29, 2008; award amount $311,220.00

48. Order No.: N4044208C3022:00002; award date Aug. 25, 2008; award amount $16,832.00

49. Order No.: N4044208P5753; award date May 16, 2008; award amount $4,621.00

50. Order No.: N4044208P5753; award date Aug. 14, 2008; award amount $3,296.00

51. Sol. No.: N4044208T5346; award date July 10, 2008; award amount $10,527.00

52. Sol. No.: N4044208T5108; award date Dec. 30-31, 2007, award amount $4,062.00

53. Order No.: N4044208P5278; award date Feb. 8, 2008; award amount $13,073.00

54. Order No.: N4044208P5397; award date Jan. 29, 2008; award amount $12,624.00

55. Order No.: N4044208P5397 (growth work); award date Feb. 2, 2008; award amount $1,376.00

56. Order No.: N4044208P5112; award date Nov. 29, 2007; award amount $25,450.00

57. Sol. No.: N4044207T5293; award date Aug. 6, 2007; award amount $61,322.00

58. Order No.: N4044207P5816:P00001; award date Aug. 14, 2007; award amount $665.00

59. Order No.: HSCG8007P3FST57; award date Aug. 6, 2007; award amount $9,326.00

60. Order No.: HSCG8007P3FSN39; award date June 22, 2007; award amount $10,107.00

61. Order No.: N6238105P1525; award date Sept. 28, 2005; award amount $6,416.00

62. Order No.: N5005410C1007; award date Nov. 8, 2010; award amount $100,600.00

63. Order No.: N4044211C1021; award date May 23, 2011; award aount$44,689.00

   i.   Total: $23,835,783.00

49. For each contract listed in ¶48, Thermcor; Walter L. Dixon; William M. Bolean; Ronald L. Dixon; and Dale Barnes falsely and fraudulently misrepresented or conspired to misrepresent, authorize and ratify Thermcor's status as a SDVOSB concern on Federal Government websites, CCR, ORCA, and FBO.

50. For each contract listed in ¶48, Thermcor; Walter L. Dixon; William M. Bolean; Ronald L. Dixon; and Dale Barnes falsely and fraudulently submitted or conspired to submit at least one false claim to the Federal Government in the form of at least one invoice, although in most contracts multiple invoices were submitted to the Federal Government.

**FIRST CAUSE OF ACTION**
**(False Claims Act: Making or Using False Record or Statement)**
**(31 U.S.C. § 3729, et seq.)**

51. A1 and the United States repeat and reallege each allegation in ¶¶ 1 through 50 as if fully set forth herin.

52. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §3729, et seq. as amended, and incorporating all other relevant statutes and regulations.

53. By virtue of the acts described above, Thermcor; Walter L. Dixon; William M. Bolean; Ronald L. Dixon; and Dale Barnes falsely and fraudulently misrepresented or conspired to misrepresent, authorize and ratify knowingly presented, conspired, or caused to be presented, false or fraudulent claims and statements to the United States Government for payment and approval.

54. By virtue of the acts described above, Thermcor; Walter L. Dixon; William M. Bolean; Ronald L. Dixon; and Dale Barnes knowingly made, used, conspired, or caused to be made or used false or fraudulent records and statements, and omitted material facts, to induce the Federal Government to approve and pay such false or fraudulent claims.

55. Each false certification that Thermcor; Walter L. Dixon; William M. Bolean; Ronald L. Dixon; and Dale Barnes falsely and fraudulently misrepresented, authorized and ratified made, used, caused, or conspired to be made represents a false or fraudulent record or statement.  And, each claim for reimbursement or invoice submitted to the Federal Government represents a false or fraudulent claim for payment.

56. Plaintiffs cannot at this time identify all of the false statements and claims for payment that were caused by Defendants conduct.

57. The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay the claims that would not be paid but for Defendant's false and fraudulent statements and claims.

58. All Defendants knowingly made, ratified, authorized, used, conspired, and caused to be made or used, false records or statements material to false or fraudulent claims for approval and payment by the United State.

59. By virtue of the false records, statements, claims, and omissions made by all Defendants, A1, the public fisc, SDVOSB participants, and the United States suffered damages and therefore are entitled

to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation, and attorney's fees and costs.

60. Plaintiffs request a jury trial on all issues so triable.

## SECOND CAUSE OF ACTION
(False Claims Act: Presentation of False Claims)
31 U.S.C. § 3729, et seq.)

61. A1 and the United States repeat and reallege each allegation in ¶¶ 1 through 50 as if fully set forth herin.

62. This is a claim for penalties and treble damages under the Federal False Claims Act.

63. By virtue of the acts described above, Defendants knowingly presented, made, authorized, ratified, conspired with each other, or caused to be presented, false or fraudulent claims and statements to the United States Government for payment and approval.

64. By virtue of the acts described above, Defendants knowingly presented, made, used, authorized, ratified, conspired with each other, or caused to be made or used false or fraudulent records and statements, and omitted material facts, to induce the Government to approve and pay such false or fraudulent claims.

65. All Defendants knowingly made, used, ratified, authorized, conspired, or caused to be presented false and fraudulent claims for payment or approval to the United States.

66. By virtue of the false and fraudulent claims, records, statements, and omissions made by all Defendants A1, the public fisc, SDVOSB participants, and the United States suffered damages and therefore are entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation, and attorney's fees and costs.

67. Plaintiffs request a jury trial on all issues so triable.

## THIRD CAUSE OF ACTION
(Common Law Fraud)

68. A1 and the United States repeat and reallege each allegation in ¶¶ 1 through 50 as if fully set forth herin.

69. This is a civil action brought by A1 and the United States against all Defendants under the common law for fraud.

70. All Defendants presented, made, authorized, ratified, or conspired to make misrepresentations of material fact, with knowledge of their falsity and/or with reckless disregard for their truth, and with the intent that they be relied upon by A1 and the United Sates, to obtain award on Coast Guard contracts.

71. A1 and the United States had the right to rely on these representations.  Acting without knowledge of the falsity of these representations and in reliance upon defendant's misrepresentations, the United States awarded the contracts, paid false claims, and was A1, the public fisc, SDVOSB participants, and the United States were damaged in an amount to be determined.

72. Plaintiffs request a jury trial on all issues so triable.

**FOURTH CAUSE OF ACTION**
(Negligent Misrepresentation)

73. A1 and the United States repeat and reallege each allegation in ¶¶ 1 through 50 as if fully set forth herin.

74. This is a civil action brought by A1 and the United States against all Defendants under the common law for negligent misrepresentation.

75. In the course of their business, all Defendants made, ratified, authorized, or conspired to be made, false representations to the plaintiffs.  All Defendants had a pecuniary interest in making the statements.  Defendants owed a duty of care to see that it communicated truthful information to the plaintiffs.  Defendants failed to exercise reasonable care or competence in communicating the information to plaintiffs.  All Defendants breached the duty of care owed to plaintiffs by failing to exercise due care.

76. The Plaintiffs justifiably relied on the representations.

77. The Plaintiffs suffered a pecuniary loss as the proximate result of reliance upon the misrepresentations in an amount to be determined.

78. Plaintiffs request a jury trial on all issues so triable.

### FIFTH CAUSE OF ACTION
(Unjust Enrichment)

79. A1 and the United States repeat and reallege each allegation in ¶¶ 1 through 50 as if fully set forth herin.

80. All Defendants obtained, ratified, authorized, or conspired to obtain payments from the Federal Government by falsely and fraudulently stating that they were SDVOSB concerns.  As a result of these payments, all Defendants have been unjustly enriched at the expense of A1, SDVOSB participants, and the United States, under circumstances dictating that in equity and good conscience the money should be returned, in an amount to be determined at trial.

81. Plaintiffs request a jury trial on all issues so triable.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants as follows:

A. On Plaintiff's Count One, False Claims Act, judgment against all Defendants, for treble damages, for the maximum number of civil penalties allowable by law, in an amount as the Court may determine between $5,500 and $11,000 for each violation, permanent disbarment from contracting with the Federal Government, attorney's fees, costs and interest, plus such other relief as the jury deems appropriate and just;

B. On Plaintiff's Count Two, False Claims Act, judgment against all Defendants, for treble its damage, for the maximum number of civil penalties allowable by law, in an amount as the Court may determine between $5,500 and $11,000 for each violation, permanent disbarment from contracting with the Federal Government, attorney's fees, costs, and interest, plus such other relief as the jury deems appropriate and just;

C. That Relator A1 recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

D. That Relator A1 be awarded all reasonable attorney's fees and costs in bringing this action;

E.  That in the event the United States Government proceeds with this action, Relator A1 be awarded an amount for brining this action of at least 15% but not more than 25% of the proceeds of the action;

F.  That in the event the United States Government does not proceed with this action, Relator A1 be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

G.  That Relator A1 be awarded prejudgment interest;

H.  On Plaintiff's Count Three, Common Law Fraud, for damages against all Defendants in an amount to be determined, together with punitive damages, permanent disbarment from contracting with the Federal Government, attorney's fees, costs, and interest, plus such other relief as the jury deems appropriate and just;

I.  On Plaintiff's Count Four, Negligent Misrepresentation, for damages against all Defendants in an amount to be determined, permanent disbarment from contracting with the Federal Government, attorney's fees, costs, and interest, plus such other relief as the jury deems appropriate and just;

J.  On Plaintiff's Count Five, Unjust Enrichment, for damages against all Defendants in an amount to be determined, permanent disbarment from contracting with the Federal Government, attorney's fees, costs, and interest, plus such other relief as the jury deems appropriate and just;

K.  And for all other and further relief as the Court may deem just and equitable;

L.  For pre-judgment interest, post-judgment interest, attorney's fees and costs, as the jury deems appropriate and just.

M.  Plaintiffs request a jury trial on all issues so triable.

Respectfully submitted,

DERRICK STORMS, ESQ.
STORMS AND ASSOCIATES, P.A.
Bar No.: 0079090
1541 BRICKELL AVE., STE., 708
MIAMI, FLORIDA 33129

TEL: 786/333-3623
FAX: 206/426-3083
EMAIL: dstorms@stormsandassociates.com


Dated: November 3, 2011


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above **Complaint** and a

supporting **Memorandum** was filed **Under Seal** pursuant to the False Claims Act and was mailed to

the party listed below by U.S. Mail on this 28th day of October 2011, addressed as follows:

United States District Attorneys Office
Southern District of Florida
Attn: Civil Division Duty Agent
99 N.E. 4th Street
Miami, FL 33132
TEL: 305/961-9001


By: _____
Derrick Storms, Esq.