## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| A1 PROCUREMENT, LLC, ) | |
| ) | |
| Relator, ) | |
| ) | |
| v. ) | Case No.: 2:15-cv-15 |
| ) | |
| THERMCOR, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Defendants' Joint Motion to Dismiss this Action for Lack of Subject Matter Jurisdiction or, in the Alternative, for Failure to State a Claim upon which Relief can be Granted; and for Other Relief ("Motion to Dismiss"), filed on July 17, 2015. ECF No. 87. This matter was referred to the undersigned United States Magistrate Judge pursuant to a Referral Order from the Chief United States District Judge. ECF No. 100; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. For the following reasons, the undersigned **RECOMMENDS** that the Court **DENY** the Defendants' Motion to Dismiss, ECF No. 87.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2011, Relator filed a Qui Tam Complaint (the "Original Complaint") asserting violations of the False Claims Act ("FCA") against the Defendants in the United States District Court for the Southern District of Florida. ECF No. 1. In a *qui tam* action, a person or entity brings a civil action, asserting a violation of 31 U.S.C. § 3729, on behalf of the United

States Government ("Government").  *See*  31 U.S.C. § 3730(b)(c).  This person or entity is known as the relator.  *See The False Claims Act: A Primer*, Dep't of Just. 2 (Apr. 22, 2011); S. Rep. No. 110-507, pt. 1, at 2 (2008).  A relator bases the *qui tam* action on one of the acts listed in § 3729(a)(1), which includes knowingly making false or fraudulent claims to the Government. 31 U.S.C. § 3729(a)(1).

On December 3, 2013, the District Court for the Southern District of Florida ordered the case unsealed and directed the Relator to serve all pleadings and motions on the Defendants. ECF No. 17.  Relator filed its First Amended Complaint (the "Amended Complaint") on May 21, 2014, alleging new facts and allegations regarding the Original Complaint.  ECF No. 25 attachs. 1-11, ECF No. 29 at 2.  Shortly thereafter, the case was transferred to the Eastern District of Virginia.  ECF No. 57.

Relator A1 Procurement, LLC ("Relator" or "A1") is a federal contractor who brought this *qui tam* action on behalf of the United States.  ECF No. 25 ¶¶ 1, 5.  Defendant Thermcor, Inc. ("Thermcor") is a ship repair contractor based in Norfolk, Virginia.  *Id.* ¶¶ 7, 44.  The individual Defendants are owners, officers and/or employees of Thermcor.  *Id.* ¶¶ 10, 12-15. Relator asserts that the Defendants made false statements and claims to the Small Business Administration ("SBA") regarding the Defendants' "Service-Disabled Veteran-Owned Small Business ("SDVOSB") status.  *Id.* ¶¶ 51-60.  The Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651, set aside certain federal contracts to companies eligible for SDVOSB status.  *Id.* ¶¶ 26-27.  "[A] contracting officer may award a sole source contract to any small business concern owned and controlled by service-disabled veterans." 15 U.S.C. § 657f (2003). Relator contends that Walter Dixon ("Mr. Dixon"), one of the individual defendants, CEO and 51% owner of Thermcor, was not a service-disabled veteran.  *Id.* ¶ 72.  Relator alleges that

Defendant Thermcor did not have SDVOSB status and improperly bid on a contract available only to a SDVOSB ("the SDVOSB claim"). *Id.* ¶ 52. Relator also claims it notified the SBA of this fraudulent misrepresentation. ECF No. 1 attach. 5.

Second, Relator alleges that the individual defendants and Thermcor falsely misrepresented the net worth and asset values under the SBA 8(a) Minority Sole-Source Program ("8(a) Program"). ECF No. 25 ¶¶ 67-68. The purpose of the 8(a) Program "is to assist eligible small disadvantaged business concerns [to] compete in the American economy through business development." 13 C.F.R. § 124.1. A business can qualify for 8(a) status "if it is a small business which is unconditionally owned and controlled by one or more socially and economically disadvantaged individuals who are of good character and citizens of and residing in the United States, and which demonstrates potential for success." *Id.* § 124.101. Once admitted to the 8(a) Program, net worth must remain under $750,000.00 annually to maintain 8(a) status. *Id.* § 124.104(c)(2). Relator alleges that Thermcor and all individual defendants formed a scheme[1] to enable Thermcor and Mr. Dixon "to fraudulently misrepresent reduced net worth and asset values in their annual 8(a) certifications" because Mr. Dixon made too much money and his net worth and total assets were too great for him to be considered an economically disadvantaged person per 8(a) regulations. ECF No. 25 ¶¶ 67-68. In sum, Relator asserts that the Defendants' false claims permit them "to bid on, obtain award, and payment for approximately $30 million dollars in United States federal government contracts." *Id.* ¶ 1.

---

[1] In 2008, the individual defendants formed TLMG, LLC, a Virginia corporation, allegedly for the purpose of enabling the Defendants to hide Thermcor's assets so as to permit the company to qualify for the SBA 8(a) Program and to obtain higher profits from Thermcor by siphoning off rents collected from Thermcor to TLMG. ECF No. 25 ¶¶ 68-75. The Relator alternately refers to TLMG, LLC as "TLMG" and "TMLG." *Compare id.* ¶¶ 16, 17, 107-112 *with* ¶¶ 69, 70, 72, 73. Inasmuch as this Defendant's Registration with the Commonwealth of Virginia, attached to the amended complaint as Exhibit 3, *Id.* attach. 4, identifies it as "TLMG, LLC," the Court will consider the references to "TMLG" to be typographical errors by the Relator and will refer to this Defendant as "TLMG."

On January 29, 2015, the Defendants filed an Answer to the Amended Complaint. ECF No. 64. At the request of the Defendants, on July 2, 2015, the Court issued an order unsealing all documents. ECF No. 85. Upon review of the unsealed documents, Thermcor believed that certain FCA filing and service requirements were not properly met. ECF No. 88 at 4 ("In reviewing those documents, Thermcor has had the opportunity for the first time to realize that— pursuant to provisions of the False Claims Act, the statute under which this action was brought— this Court lacks subject matter jurisdiction."). Upon this claimed realization, Defendants filed their Motion to Dismiss, asserting lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 87. Relator filed a timely response in opposition, ECF No. 96, and Defendants then filed a timely reply, ECF No. 99.

The Court held a hearing on August 28, 2015 on the matter.[2] ECF No. 108. Attorney Derrick R. Storms ("Mr. Storms") represented Relator with local counsel, Eric A. Cox. Attorneys Steven W. Fitschen ("Mr. Fitschen"), Graham T. Jennings, and Barry C. Hodge represented Defendants. Assistant United States Attorney Clare P. Wuerker ("Ms. Wuerker") represented the United States. The Court took the Motion to Dismiss under advisement to prepare this Report and Recommendation.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To be sufficient under Rule 8, the pleading must meet

---

[2] The hearing transcript can be found at ECF No. 112. The Court will cite references to the hearing transcript as "Hr'g Tr."

two basic requirements: it must contain sufficient factual allegations and those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Defendants' Motion to Dismiss asserts that the action should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and, in the alternative, for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(1), (6). When considering a motion to dismiss, only those allegations that are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that legal conclusions must be supported by factual allegations). In other words, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions do not enjoy a similar deference. *Iqbal*, 556 U.S. at 678. Defendants 12(b)(1) basis presents a series of procedural violations that Defendants argue are jurisdictional in nature. *See* ECF No. 88. However, as the Fourth Circuit recently noted in *Smith v. Clark/Smoot/Russell*, "procedural requirements of the [FCA], including its seal provision, 'are not jurisdictional.'" 796 F.3d 424, 430 (4th Cir. 2015). Therefore, to the extent Defendants assert a lack of subject matter jurisdiction, the Court recommends denying Defendant's motion.

That said, the alleged procedural violations must be addressed under Rule 12(b)(6). *See Id.* at 432 (stating that courts "treat a lack of compliance with Rule 9(b)'s pleading requirements as a failure to state a claim under Rule 12(b)(6), which [they] review *de novo*"); *U.S. ex rel. Saunders v. Unisys Corp.*, No. 1:12-CV-00379 GBL, 2014 WL 1165869, at *5 (E.D. Va. Mar. 21, 2014) ("[B]ecause the version of the bar controlling in this case is non-jurisdictional, the

Court converts [defendant's] Rule 12(b)(1) motion to dismiss for lack of jurisdiction into a Rule 12(b)(6) motion to dismiss for failure to state a claim and limits its review of the . . . claim to the four corners of [relator's] Amended Complaint."); *see also Scott v. Hampton City Sch. Bd.*, No. 4:14CV128, 2015 WL 1917012, at *1-2, n.1 (E.D. Va. Apr. 27, 2015) (construing a 12(b)(1) motion under the context of 12(b)(6) because the defendant's argument on timeliness is not jurisdictional).[3]

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

### III. ANALYSIS

In support of their Motion to Dismiss, Defendants assert numerous procedural violations regarding the filing and service requirements of *qui tam* actions. ECF No. 88 at 2-3. Further, Defendants assert that the existence of these violations warrants dismissal based on their position that filing and service requirements are jurisdictional. *Id.* at 2 ("[F]iling and serving requirements are jurisdictional. When the requirements are violated, they cannot be waived or cured; the action must be dismissed for lack of subject matter jurisdiction."). The Court FINDS that procedural violations, such as filing and service of process, are not jurisdictional and thus do

---

[3] The Defendants' claim that Relator did not comply with the requirements of 31 U.S.C. § 3730(e)(4), *see infra*, p. 8, would have raised jurisdictional issues prior to 2010. However, that year Congress amended section (e)(4) deleting language depriving courts of jurisdiction for violations of this section, and instead authorizing but not requiring courts to dismiss actions for such violations. *See Saunders*, 2014 WL 1165869, at *4-5.

not warrant per se dismissal.   Consequently, the Court must address whether procedural violations occurred, and whether, in its discretion, the Court should dismiss the action under the Rule 12(b)(6) standard.

A.  Relevant Statutory Provisions and Defendants' Claims.

The premise of the FCA is to prevent individuals and entities from making false claims to obtain payment by committing fraud upon the Government.   Enacted in 1863, the FCA was "designed to protect the United States Treasury from fraud and abuse in Civil War defense contracts."  S. Rep. No. 110-507, pt. 1, at 1 (2008).  As mentioned, *supra* Part I, the FCA permits individuals, serving in the capacity as *qui tam* relators, to bring a FCA action on behalf of the Government.  31 U.S.C. § 3730(b) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.").  A successful relator will "receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim."  *Id.* § 3730(d)(1).  Relator alleges that Defendants violated the FCA by "knowingly causing the submission of false or fraudulent claims for payment to the United States; knowingly using a false record or statement material to a false claim; or conspiring to commit either of the above."  ECF No. 25 ¶ 4 (citing 31 U.S.C. § 3729(a)(1)(A)-(C)).

Section 3730 indicates the procedural requirements relators and the Government must follow when a FCA action is brought.  31 U.S.C. § 3730.  The first relevant procedural provision under § 3730 to this case is paragraph (b)(2), which provides:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.  The Government may elect to intervene and proceed with the action

7

within 60 days after it receives both the complaint and the material evidence and information.

*Id.* § 3730(b)(2). Within this provision is the requirement that the relator serve the Government pursuant to Fed. R. Civ. P. 4. Further, the provision requires that the complaint be filed in camera (or "under seal") and is to remain under seal for at least sixty days before the defendant is served. The sixty-day time period gives the Government an opportunity to review the allegations in the complaint and the material evidence in the disclosures, and determine whether to intervene and prosecute the action or to decline intervention, permitting the relator to continue pursuing its case. Regarding § 3730(b)(2), the Defendants assert that Relator failed to provide the Government with the required § 3730(b)(2) disclosures in regards to the Amended Complaint, failed to serve the Attorney General of the United States, improperly served the Government by email, and subsequently breached the seal provision by electronically filing a letter opposing the Government's request for an extension of time to investigate.

The second relevant procedural provision involves what is known as the "public disclosure bar," which only comes into play if a public disclosure is made. *Id.* § 3730(e)(4). The public disclosure bar "was designed to bar only truly parasitic cases filed by relators whose complaints were based upon public disclosure of [the] allegations." S. Rep. No. 110-507, pt. 1, at 5 (2008). The provision states:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
>> **(i)** in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>> **(ii)** in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>> **(iii)** from the news media,
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). This provision essentially refers to the notion that if the relator's allegations are based on information he receives in a public disclosure, such as in a news report or a publicly filed court document, then he is barred from bringing those allegations unless he is the "original source" of the information in the public disclosure. The provision further defines "original source" as:

> . . . an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government *before* filing an action under this section.

*Id.* § 3730(e)(4)(B) (emphasis added). For instance, if a journalist uncovers information that a corporation is defrauding the government, the journalist could publicly disclose his findings in a news article and then later bring a FCA action based on the same allegations because he is the original source (*i.e.* he uncovered the fraud).

At the hearing the parties spent a substantial amount of time arguing whether the proper § 3730(e)(4) procedural service of process requirements were satisfied and whether failure to comply therewith warrants dismissal for lack of jurisdiction. Oddly enough, Mr. Storms did not originally dispute that a public disclosure occurred, *see, e.g.,* ECF No. 25 ¶ 2, and instead argued that he satisfied the § 3730(e)(4) disclosure requirements because, although he did not provide any extensive material in the disclosure, he did have a few phone conversations with the U.S. Attorney in the Southern District of Florida, telling her the "gist of it," and sent a few emails notifying her that he was filing the Amended Complaint and providing her office with a copy of the Amended Complaint the day before filing it. Hr'g Tr. at 72, 74.

The Government also addressed the procedural basis of § 3730(e)(4) as it pertained to the Amended Complaint, as Ms. Wuerker stated at the hearing:

9

> [T]he United States does not appear to have received any written disclosure of materials in connection with the amended complaint prior to its filing; however . . . it does appear that there were written disclosures of material evidence provided to the government via e-mail after the amended complaint was filed and after the government status report that you've read from this morning.

Hr'g Tr. at 81. Additionally, Ms. Wuerker mentioned that she did not believe § 3730(e)(4) disclosures are required to be provided under the same service obligations as the § 3730(b)(2) requirements and therefore § 3730(e)(4) would not require service on the Attorney General or the U.S. Attorney. *Id.* Adding to the confusion, Mr. Storms later argued in response to an entirely different motion that no public disclosure occurred. ECF No. 114 at 10-12.[4]

The alleged public disclosure the parties refer to is a SBA protest that A1 Procurement, JVS made to the SBA.[5] SBA regulation 13 C.F.R. § 125.24(b) permits "any interested party [to] protest [an] apparent successful offeror's SDVOSBC status." 13 C.F.R. § 125.24(b). This permits competitive bidders, among others, of government contracts to submit protests to the SBA when there is evidence that one bidder is not of the status in which it claims to be, and thus, was unfairly awarded the contract by the agency. The allegations in the SDVOSB claim derive from a phone conversation on August 18, 2011, whereby Relator asserts that "Mr. Dixon admitted that he was not a Service Disabled Veteran," thereby demonstrating that Thermcor improperly bid on a contract available only to a business with SDVOSB status. ECF No. 1 at 8. Subsequent to this phone conversation, on August 19, 2011, Mr. Storms, on behalf of A1 Procurement, JVS, submit a protest to the SBA (No. HSCG80-11-Q-P45MY7) relying on the

---

[4] Defendants argued at the hearing that the Relator, A1 Procurement, LLC, may not be the original source of the SDVOSB claim because the entity that made the public disclosure was A1 Procurement, JVS, a joint venture between A1 Procurement, LLC and another company undisclosed to the Court. Hr'g Tr. at 95-102. Therefore, the Defendants suggested that discovery, including the deposition of Mr. Storms, would support the Court's dismissal of the SDVOSB claim under § 3730(e)(4)(A). *Id.*

[5] The SDVOSB claim is therefore the claim in which the Court will apply the public disclosure bar analysis. *See U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 579 (E.D. Va. 2011) (explaining that "the public disclosure bar must be applied on a claim-by-claim basis").

phone conversation with Mr. Dixon as the grounds for the protest. *Id.* attach. 5. The protest alleged that, due to Mr. Dixon's admission that he is not a service disabled veteran, "Thermcor, Inc is not owned or controlled by a Service Disabled Veteran and is ineligible to be awarded SDVOSB set-aside contracts." *Id.* On September 16, 2011, the SBA Office of Contract Assistance denied the protest on the basis that Thermcor withdrew its offer for the contract. *Id.* attach. 6; 13 C.F.R. § 125.24(b) (implying that protests can only be made against those with a pending offer). Relator then relied on the same phone conversation as the basis for the allegations in its Original Complaint. ECF No. 1 at 8-9.

Returning to the issue at hand, the Defendants contend that A1 Procurement, JVS's SBA protest was a public disclosure that A1 Procurement, LLC relied on for the allegations in its Original Complaint. ECF Nos. 88 at 3, 113 at 13-14. They further argue that because it was a public disclosure, it triggers the public disclosure bar in § 3730(e)(4), requiring the Relator to be an "original source" and to notify the Government of the allegations or transactions *before* filing the complaint. *Id.*; 31 U.S.C. § 3730(e)(4)(B). Inasmuch as Relator A1 Procurement, LLC, and A1 Procurement, JVS are different entities, the Defendants contend that the latter entity is the original source, resulting in the former entity being subject to the public disclosure bar.

**B. Procedural Violations, Such as Filing and Service of Process, Are Not Jurisdictional, but the Court has Discretion to Dismiss Claims if the Procedural Violations Incurably Frustrated the Purpose of the Statutory Provision.**

Most recently, the Fourth Circuit stated in *Smith* that "[t]he procedural requirements of the [FCA], including its seal provision, 'are not jurisdictional, and violation of those requirements does not per se require dismissal.'" 796 F.3d at 430 (quoting *U.S. ex rel. Lujan v. Hughes Aircraft Co.,* 67 F.3d 242, 245 (9th Cir.1995)); *U.S., ex rel., Rigsby v. State Farm & Cas.*

11

*Co.*, No. 14-60160, 2015 WL 4231645, at *9 (5th Cir. July 13, 2015) (adopting the Ninth Circuit's *Lujan* test and stating that dismissal as a sanction is not warranted by the text of § 3730(b)(2)); *U.S. ex rel. Ubl v. IIF Data Solutions*, No. CIV.A. 1:06-CV-641, 2009 WL 1254704, at *2 (E.D. Va. May 5, 2009) (holding that the filing and service requirements of § 3730(b)(2) are not jurisdictional; *see also U.S. ex rel. Siller v. Becton Dickinson & Co. By & Through Microbiology Sys. Div.*, 21 F.3d 1339, 1346-47 (4th Cir. 1994) (concluding that Congress did not intend for § 3730(b)(4) to create a jurisdictional compliance requirement). *But see U.S. ex rel. Summers v. LHC Grp., Inc.*, 623 F.3d 287, 299 (6th Cir. 2010) ("[W]ithout meeting those [procedural] conditions, a [FCA] plaintiff has no more right to bring suit in the Government's name than any other private person.").

At the hearing, just eighteen days after the Fourth Circuit ruled in *Smith*, the Defendants argued that the court's holding in *Smith* should be narrowly construed. Mr. Fitschen argued on behalf of the Defendants that this Court should narrowly interpret the holding in *Smith* to only apply to seal violations in a *qui tam* action. Hr'g Tr. at 59. He expressed, "When they say sealing and filing requirements, they're talking about seal breaches, and that's very evident from the face of the briefing and from the oral argument. . . . [T]here's a rhetorical term for that, synecdoche, when you use the whole to refer to the part." *Id.* at 41.

The undersigned rejects the Defendants' contention that the Fourth Circuit's holding in *Smith* is limited to the finding that only seal violations are procedural, not jurisdictional; instead, this Court adopts a broader interpretation based on the plain language of the holding. The Fourth Circuit referred to "procedural violations" in the plural to imply that no procedural violations are jurisdictional. The use of the phrase, "including seal provisions," that is set off by commas simply refers, as it does here in this sentence, to the basic principle of embedding an independent

12

clause with a dependent clause that can be removed without changing the meaning of the sentence. Thus, one could remove the embedded phrase and the result would grammatically read: "The procedural requirements of the [FCA] are not jurisdictional, and violation of those requirements does not per se require dismissal."

Further, relying on the Fourth Circuit's interpretation of § 3730(b)(4)—the FCA provision regarding the Government's timeline to intervene—the *IFF Data Solutions* court stated that "courts must not assume that appearance of the word "shall" in a statutory provision renders that provision jurisdictional, but instead must examine . . . congressional intent." 2009 WL 1254704, at *2 (citing *Siller*, 21 F.3d at 1343 (basing its ruling on the Supreme Court's holding in *Brock v. Pierce County*, 476 U.S. 253, 262 (1986))). The *IFF Data Solutions* court also reasoned that Congress did not intend for § 3730(b)(2) to be jurisdictional based on the absence of express jurisdictional limitations in the statutory provision. *Id.* at *3 ("Congress could have used this language, or something similar, and removed jurisdiction where the relator failed to comply with the filing and service requirements."). Further, the court noted that in *Arbaugh*, the Supreme Court stated, "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." 2009 WL 1254704, at *2 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006)). The *IFF Data Solutions* court also noted that nothing in the legislative history of the FCA indicates § 3730(b)(2)'s requirements are jurisdictional. *Id.* at *3. Lastly, the *IFF Data Solutions* court analyzed whether finding § 3730(b)(2) filing and service requirements to be jurisdictional was in line with the purpose of the FCA. *Id.* The court held that such a finding would "frustrate the overarching purpose of the [FCA], which is to prevent fraud perpetrated by private parties against the government." *Id.* The basis for this conclusion is that the government, the real party-

13

in-interest in FCA claims, would be deprived of the opportunity to pursue the litigation simply because the relator failed to comply with the procedural requirements of the statute. *Id.*

Based on the Fourth Circuit's holding in *Smith* and the detailed analysis by the *IIF Data Solutions* court regarding the statutory text, congressional intent, and the purpose of the filing and service provisions, this Court finds that FCA procedural violations are not jurisdictional. Filing and service of process—the issues in this case—are procedural and therefore fall under the Fourth Circuit's holding that violations of such are not jurisdictional and do not warrant per se dismissal. *See* Fed. R. Civ. P. 5; 31 U.S.C. § 3730. Consequently, whether the procedural violation warrants dismissal depends on the nature of the violation itself, and whether it incurably frustrates the purpose of the statute.

C. The Alleged Procedural Violations Do Not Warrant Dismissal Because They Did Not Incurably Frustrate the Purpose of the FCA.

The Fourth Circuit stated plainly that, on its face, the FCA does not require dismissal of a case with prejudice under circumstances where procedural violations occurred. *Smith*, 796 F.3d at 430. Though recognizing that dismissal with prejudice is not required, the court adopted the Second Circuit's approach as to whether procedural violations warrant dismissal by determining whether the violations "incurably frustrated" the statutory purpose of the particular FCA provision at issue. *Id.* (citing *U.S. ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998 (2d Cir. 1995)). In other words, if a Relator violates the procedural requirements of the FCA, and that violation incurably frustrates the statutory objectives underlying the filing and service requirements, then the Court may dismiss the action with prejudice. *Id.* Those objectives typically include the opportunity for the Government to determine if it was already investigating the potential fraud or to investigate the allegations to decide whether to intervene, preventing the

14

alleged fraudster from being tipped off about an investigation, and protecting the reputation of a defendant who may have been named in a fraud action brought in the name of the United States but the United States has not yet decided whether to intervene. *Id.* (citing *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011)). The Court consequently addresses each alleged procedural violation raised by the Defendants to determine whether such violation incurably frustrates the FCA's statutory purpose so as to warrant dismissal.

1.  The Purpose of FCA Provision § 3730(b)(2), Disclosures in Regards to the Amended Complaint, Was Not Incurably Frustrated.

Defendants assert that Relator failed to comply with § 3730(b)(2)'s written disclosure requirements for the Amended Complaint. Hr'g Tr. at 57. Defendants point to the Government's *Ex Parte* Status Report Regarding Calculation of the Time During Which the Government May Intervene and the Amended Complaint to Remain Under Seal ("Status Report"), which states:

> The Amended Complaint contains substantive allegations regarding the Defendants' participation and eligibility in the Small Business Administration's 8(a) program. The Government has not been provided any material disclosure from the Relator regarding these allegations, and only became aware of them when Relator's counsel provided a 1 day advance copy of the filed Amended Complaint.

ECF No. 26 at 2.

The FCA provides: "A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure." 31 U.S.C. § 3730(b)(2). The purpose of the written disclosures provision allows the federal government time to review the allegations and determine whether or not to pursue the action itself or decline to intervene,

allowing the relator to bring forth the action.  *See In re Natural Gas Royalties Qui Tam Litig.*, 467 F. Supp. 2d 1117, 1233 (D. Wyo. 2006) *aff'd in part sub nom. In re Natural Gas Royalties*, 562 F.3d 1032 (10th Cir. 2009) ("The well-recognized purpose of the disclosure requirement is to provide the government with ample information to investigate and permit an informed decision on intervention.").  The Government is always the real party-in-interest in a FCA suit and therefore must have the opportunity to review a relator's allegations.  *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932-36 (2009).

In *Natural Gas Royalties*, the defendants in a *qui tam* action argued that the disclosure requirement meant that a relator must provide significant evidence and information of a false claim—more than a "mere guess, hunch or suspicion"—to the government.  *Natural Gas Royalties*, 562 F.3d at 1231 (citing *United States ex rel. Made in the USA Found. v. Billington*, 985 F.Supp. 604 (D. Md. 1997)).  The district court thoroughly assessed § 3730(b)(2), determining whether the defendant's argument that a disclosure statement meet some qualitative standard had any basis.  *Id.* at 1232-36 (using Black's Law Dictionary to better grasp the meanings of "substantially all" and "material" in the written disclosure provision as well as comparing the plain meaning to the legislative purpose).  The court eventually concluded that though a relator should include as much of what he will rely upon to support his contentions and allegations, the court reads no such standard into the plain language of § 3730(b)(2).  *Id.* at 1231-32.  Therefore, "So long as he or she serves written disclosure of substantially all that he or she possesses, § 3730(b)(2) is not literally offended."  *Id.* at 1232.

The Court does not know *what* material allegations were provided to the Government. Defendants base their argument on the Government's Status Report statement, ECF No. 16 at 2, which indicated it had not been provided any material disclosures and needed an extension of

time to review the allegations in the Amended Complaint. Relator only asserts that its attorney emailed and telephoned with the U.S. Attorney's Office in the Southern District of Florida and the Court was not provided with any such descriptions. The Court is aware, however, that there appears to be no formal document or separate written disclosure other than the alleged emails. If the Court agrees with a broad interpretation similar to the court in *Natural Gas Royalties*, a written disclosure in the form of an email may suffice to meet the disclosure standards in § 3730(b)(2). Alternatively, the Court could narrowly interpret the statutory provisions and find that written disclosures must meet some qualitative level. In any event, without knowledge of the email contents, which neither party has proffered, the Court cannot assess any qualitative standard, nor should it hypothesize the detail of information or qualitative standard these disclosures met.

Regardless, as mentioned in the Government's May 22, 2014 Status Report, the Government claimed that the lack of material disclosures from the Relator inhibited its ability to timely pursue an investigation into the Amended Complaint. ECF No. 26 at 2. Thus, at the time, the Government was likely prejudiced by this procedural violation and therefore the statutory purpose may have been frustrated at that time. However, based on subsequent representations by the Government, it appears the statutory purpose was not *incurably* frustrated as required by the standard adopted by the Fourth Circuit in *Smith*. Any such violation was cured because the Government was granted an extension of time to investigate. ECF No. 28; Hr'g Tr. at 82 ("The United States certainly feels as though it conducted an appropriate investigation, both into the original complaint's allegations and into the amended complaint's allegations."). The Government's Statement of Interest on July 30, 2015 ("Statement of Interest"), represented that the Relator properly served it with the Original Complaint and Disclosure Statement. ECF No.

17

95 at 3. Further, at the hearing, Government counsel stated, "We do not feel that, taken as a whole, our investigations into the purposes of the statute were incurably frustrated by . . . the delay in receiving any disclosure materials in connection with the amended complaint." Hr'g Tr. at 82.

Consequently, based on representations made by the Government, the Court finds that, whether or not a procedural violation occurred in the Relator's untimely production of disclosure materials in connection with the Amended Complaint, the Government was able to adequately investigate the matter, and any delay in producing the written disclosure materials did not incurably frustrate the purpose of the written disclosure statutory provision. Dismissal therefore is not warranted.

## 2. The Purpose of the FCA Provision Requiring Service on the Attorney General of the United States Was Not Incurably Frustrated.

Defendants assert that, based on the certificates of service, Relator did not serve the Attorney General of the United States and only served the U.S. Attorney's office. ECF No. 88 at 2, 3 n.1. Further, they assert that the Attorney General "did not get any disclosure according to the United States' status report." Hr'g Tr. at 57.

From the records and statements of the Government, it appears that service was proper. With regards to the Original Complaint, the Government stated, "The United States has reviewed its files in this matter, and finds that its records indicate the United States Attorney for the Southern District of Florida and the Attorney General were served with the Relator's complaint and disclosure statement on November 8 and 28, 2011, respectively, in accordance with the requirements of Fed. R. Civ. P. 4(i)(1)." ECF No. 95 at 3. The Defendants' counsel admitted during the hearing that the Defendants' evidence for their position questioning service was based

18

on their reading of the certificate of service. Hr'g Tr. at 46. However, he acknowledged that the Government represented in its Statement of Interest that the Attorney General was served on the Original Complaint and admitted "[the Defendants] have no basis to contradict that." *Id.* Inasmuch as both the Relator and the Government represented that service on the Attorney General was proper, the Defendants' conclusory contention that the Attorney General was not served lacks any evidentiary support. *Cf. King v. Equable Ascent Fin., LLC*, No. 1:12-CV-443, 2013 WL 2474377, at *2 (M.D.N.C. June 10, 2013) (finding "insufficient service of process to be abandoned and, in the alternative, find[ing] it should be denied for lack of evidence").

Further, Ms. Wuerker stated at the hearing that the Government conducted an appropriate investigation into both the Original Complaint's allegations and the Amended Complaint's allegations and that no purposes of the statute were incurably frustrated. *Id.* at 82. Thus, once again there is insufficient evidence that a procedural violation occurred, and affirmative evidence, based on the Government's representations, that service was proper. In any event, regardless of whether a procedural violation may have occurred, based on the Government's representation and the lack of any evidence from the Defendants to the contrary, the statutory purpose of the FCA was not incurably frustrated and therefore dismissal is not warranted.

### 3. The Purpose of the FCA Provision Requiring Service by Certified Mail Was Not Incurably Frustrated.

The Defendants argue that Relator served the U.S. Attorney for the Southern District of Florida and the Attorney General with the Amended Complaint via CM/ECF (electronic filing), and that this violated Rule 4(1)(A)-(B). ECF No. 88 at 2. The Relator does not dispute this assertion and, in fact, stated in both his certificate of service, ECF No. 25 at 27, and his brief, ECF No. 96 at 1 ("Relator served the United States Attorney's Office in the Southern District of

Florida by email pursuant to that office's instructions."), that such service was proper. Thus, the question is whether the Relator violated the Federal Rules by serving the Attorney General and the U.S. Attorney for the Southern District of Florida by electronic means on the CM/ECF system, and whether such service incurably frustrated the FCA's statutory purpose.[6]

Rule 5(b)(2)(E) states that service is proper when "sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served." Fed. R. Civ. P. 5(b)(2)(E); *see also Yerion v. Branch Banking & Trust Co.*, 27 F. Supp. 3d 677, 681 (E.D. Va. 2014) (quoting E.D. Va. Filing Manual, Chapter Four, pg. 33 (Nov. 1, 2010)) ("[S]ervice by electronic means is treated the same as service by mail."); *BSN Med., Inc. v. Parker Med. Associates, LLC*, No. 3:09CV15, 2011 WL 1343188, at *2 (W.D.N.C. Apr. 8, 2011); *Butler v. PP & G, Inc.*, No. CIV.A. WMN-13-43, 2013 WL 4026983, at *2 (D. Md. Aug. 6, 2013). At the hearing, Mr. Storms stated that prior to filing the Amended Complaint he spoke to an Assistant United States Attorney who advised him electronic service would be acceptable. Hr'g Tr. at 75. There is no indication that such consent is in writing, but the Defendants have proffered no evidence countering this representation. Regardless, any doubt regarding service is resolved in the Relator's favor based on the United States Attorney's Statement of Interest, which stated that the Relator's service on its office was proper. ECF No. 95 at 3. Therefore, the Court finds the statutory purpose was not incurably frustrated and dismissal is not warranted on this ground.

4. Relator's Seal Breach Did Not Incurably Frustrate the Statutory Purpose.

Defendants argue that Relator breached the seal by filing a letter on the Court's public electronic filing system opposing the Government's request for an extension of time to

---

[6] When a document is filed using the CM/ECF system, an email is sent to all counsel of record on the matter.

investigate the allegations in the Amended Complaint.  ECF No. 88 at 6.  Section 3730(b)(2)

provides: "The complaint shall be filed in camera, shall remain under seal for at least 60 days."

Defendants rely on *Anderson v. ITT Indus. Corp.*, which held that failure to file under seal

"frustrate[s] Congress' desire to give the government an early opportunity to assess the claims

and to consider the course of action that it would take."  No. 1:05CV720, 2006 WL 4117030, at

*2 (E.D. Va. Jan. 11, 2006) *aff'd sub nom. U.S. ex rel. Anderson v. ITT Indus. Corp.*, 201 F.

App'x 964 (4th Cir. 2006).

In this case, Relator filed the Original Complaint under seal as required by § 3730(b)(2)

on November 3, 2011.  ECF Nos. 1, 2, and 7.  On January 23, 2012, the Government filed, under

seal, a Motion for an Extension of Time to Consider Election to Intervene.  ECF No. 5.  The court

granted the Government's request for an extension.  ECF No. 8.  On September 13, 2013, the

Government filed another sealed request for an extension of time, requesting until November 18,

2013, to notify the court of its decision regarding intervention.  ECF No. 14.  The court granted

the Government's second request, filing a sealed order to that effect.  ECF No. 15.  On

November 18, 2013, the Government declined to intervene.  ECF No. 16.  The court ordered the

Complaint unsealed on December 3, 2013, and to be served upon the Defendants.  ECF No. 17.

On May 24, 2014, Relator filed a Letter/Motion to Seal, requesting "that it be permitted to file its

First Amended Complaint under seal."  ECF No. 24.  That same day, Relator filed the Amended

Complaint.  ECF No. 25.  On July 18, 2014, the Government filed a sealed motion for an

extension of time to consider election to intervene regarding the Amended Complaint.  ECF No.

28.  On July 21, 2014, Relator filed an unsealed motion (in the form of a letter) to the court

objecting to the Governments third motion for an extension of time.  ECF No. 30.  That same

day, the Government filed a Notice of Seal Breach, stating that Relator's "letter to the Court,

filed publicly via CM/ECF, breaches the seal by revealing information regarding the Amended Complaint and the Government's subsequent sealed application for [an] extension of time." ECF No. 31.

Defendants argue that Relator's unsealed motion to the court on July 21, 2014 violated § 3730(b)(2)'s seal requirements—which they argued are jurisdictional—thereby requiring the case to be dismissed for lack of subject matter jurisdiction. ECF No. 88 at 6-7. Contrary to the Defendants' assertion, the Fourth Circuit has stated that no provision of the FCA explicitly warrants dismissal as a sanction for violating the § 3730(b)(2) seal requirement. *Smith*, 796 F.3d at 430 (citing *Lujan*, 67 F.3d at 244). In *Smith*, the Fourth Circuit found it was inappropriate for a district court to dismiss a *qui tam* action where the relator violated the seal provision because "the seal violation did not incurably frustrate the seal's statutory purpose." *Id.* at 427. The court discussed the violation and its effect on the purposes of the seal provision:

> The False Claims Act's seal provision serves several purposes: "(1) to permit the United States to determine whether it already was investigating the fraud allegations (either criminally or civilly); (2) to permit the United States to investigate the allegations to decide whether to intervene; (3) to prevent an alleged fraudster from being tipped off about an investigation; and, (4) to protect the reputation of a defendant in that the defendant is named in a fraud action brought in the name of the United States, but the United States has not yet decided whether to intervene."

*Id.* at 430 (citing *Holder*, 673 F.3d at 250).

In this case, the purpose of the seal provision was not incurably frustrated. The Government had ample time to consider the Relator's allegations. With regards to the Original Complaint, the Government had over two years, from November 3, 2011 until November 18, 2013, to consider Relator's allegations. ECF Nos. 1, 16. Regarding the Amended Complaint, the Government had from May 14, 2014, when the Amended Complaint was filed, until July 21, 2014, when Relator breached the seal by opposing the Government's July 18, 2014, motion for

an extension of time. ECF Nos. 25, 28, 30. The Court subsequently granted the Government a period of sixty days to make its election regarding intervention in the Amended Complaint. ECF No. 33. On September 30, 2014, the Government declined to intervene, once again. ECF No. 34. The Court finds that even with Relator's motion, the Government had ample time to consider whether to intervene. Both the Original Complaint and the Amended Complaint were properly filed under seal. The Defendants were already on notice that they were the subject of a FCA suit and there is thus no argument that any information revealed in the Relator's motion could have "tipped them off." *See Smith*, 796 F.3d at 429-30 (declining to dismiss for a seal violation where Relator's attorney called the Defendants during the seal period and notified them of the pending complaint and finding that the Government still had time to investigate and the defendants' reputations did not suffer); *Davis*, 766 F. Supp. 2d at 685 (finding that "the unsealed filing of the [second amended complaint] did not deprive the government of the opportunity to investigate relators' allegations and to decide whether to intervene in the *qui tam* action" because it only provided additional details of the fraud and the defendant was already on notice of the suit as he was named in the original complaint); *Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*, No. 1:13-CV-1129 GBL/TCB, 2014 WL 1928211, at *5 (E.D. Va. May 13, 2014), *appeal dismissed* (Dec. 4, 2014) (declining to apply the sealing requirement of the Virginia Fraud Against Taxpayers Act, which parallels the FCA, to the amended complaint because it only alleged a change in legal authority and not a change in facts or parties).

Further, the Defendants likely suffered no additional harm to their reputations due to Relator's motion. Not only had the Defendants already been served with the Original Complaint, the motion, ECF No. 30, only mentioned the Defendants' name once (in the title of the document), and did not contain any substantive information regarding the Defendants or the

allegations in the Amended Complaint. *See United States v. King Pharm., Inc.*, 806 F. Supp. 2d 833, 844 (D. Md. 2011) (declining to seal documents that "do not contain information that would jeopardize an ongoing investigation, nor . . . include confidential investigative methodology. The first motion merely outlines . . . investigative procedures"); *U.S. ex rel. Yannacopolous v. Gen. Dynamics*, 457 F. Supp. 2d 854, 859 (N.D. Ill. 2006) (unsealing documents that contained no substantive details of the government's investigation and ordering those documents that did contain substantive information to remain sealed); *U.S. ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994) (finding it proper to unseal "references concerning routine sources of information," such as status reports).

Finally, the Court will take the Government's current position on this matter into account because "[t]he mere possibility that the Government *might* have been harmed by disclosure is not alone enough reason to justify dismissal of the entire action." *Lujan*, 67 F.3d at 245. At the hearing on the Defendants' Motion to Dismiss, Ms. Wuerker stated, "The United States certainly feels as though it conducted an appropriate investigation, both into the Original Complaint's allegations and into the Amended Complaint's allegations. We do not feel that, taken as a whole, our investigations into the purposes of the statute were incurably frustrated . . . by the letter that Mr. Storms appears to have filed out from under seal in connection with the extension request." Hr'g Tr. at 82. Therefore, taking into account the four main purposes of the seal provision and the circumstances of this case, including the Government's statement at the hearing, the Court finds that Relator's seal breach did not incurably frustrate the purpose of the statutory provision and therefore declines to recommend dismissal based on this ground.

5. The Defendants' Argument That Relator Failed to Provide § 3730(e)(4) Disclosures is Moot Because the (e)(4) Procedural Requirements Were Not Triggered Since no Public Disclosures Occurred.

The Defendants assert that Relator failed to serve or provide the Disclosure Statement *before* filing the Original Complaint and the Amended Complaint. ECF No. 88 at 3; Hr'g Tr. at 46-47. The Defendants base this claim on the fact that Relator asserted that it was the "original source" that voluntarily disclosed to the Government the information on which the claims are based, and their interpretation of 31 U.S.C. § 3739(e)(4)(B), which requires the original source to have "provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

Section 3730(e)(4) applies to FCA actions only when a public disclosure has occurred: "The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were *publicly disclosed.*" *Id.* § 3730(e)(4)(A) (emphasis added).[7] The over-arching purpose of this subpart in the statute is to prevent individuals from asserting a FCA action based on information the individual gathers from the public domain. *See U.S. ex rel. Saunders v. Unisys Corp.*, No. 1:12-CV-00379 GBL, 2014 WL 1165869, at *5 (E.D. Va. Mar. 21, 2014) ("The public-disclosure bar was enacted to 'strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits in which relators simply feed off previous disclosures of fraud known to the public, rather than exposing independently discovered fraud.'") (citing *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 295 (2010)).

---

[7] Courts informally refer to this section as the "public disclosure bar" because when a public disclosure occurs, it theoretically prevents courts from hearing the action (*i.e.* bars the action) because the courts are to dismiss the action unless the relator is also the original source of the information disclosed.

Therefore, the statute specifically instructs the courts to "dismiss an action or claim under this section" if the relator is asserting claims that he gathered from a public disclosure. 31 U.S.C. § 3730(e)(4)(A). As mentioned, *supra* Part III.A., one exception preventing dismissal in a case where a public disclosure has occurred is when the relator is considered the "original source," *i.e.* the individual who made the initial public disclosure. *Id.* § 3730(e)(4)(B). Therefore, the statute permits the person who made a public disclosure regarding the false claims to then bring that action in the court as a relator on behalf of the Government. *See Wilson*, 559 U.S. at 301 (noting that "Congress carefully preserved the rights of the most deserving *qui tam* plaintiffs: those whistle-blowers who qualify as original sources").

The Defendants claim that the SBA protest lodged by A1 Procurement, JVS was a public disclosure. Thus, the Court's first inquiry is to determine whether the SBA protest is in fact a public disclosure under 31 U.S.C. § 3730(e)(4)(A). The Relator's pleadings provide the Court with no guidance and, in fact, are self-contradicting. *Compare* ECF No. 1 at 1 ("A1 is the original source of, and has direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the Government before filing this action.") and Hr'g Tr. at 67 ("MR. STORMS: Well, the only public disclosure in the case was the SBA protest."), *with* ECF No. 114 at 10-11 (naming a sub-section: "No Public Disclosures Occurred" and describing how an SBA protest is not a public disclosure: "The SDVOSB protest against Thermcor was not publicly disclosed to the 'public at large'").[8]

---

[8] The fact that the Realtor's counsel originally agreed with the Defendants' assertion that a public disclosure occurred, and then disavowed that position when it appeared he could potentially become a witness on that issue, is cause for concern. However, because the Court has determined that no public disclosure occurred, the Relator's fluctuating positioning on this matter does not affect the outcome.

The Fourth Circuit follows a three-step approach to determine whether a qualifying public disclosure occurred which would trigger the public disclosure bar. *See Davis*, 753 F. Supp. 2d at 579-80; *see also United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 528 F. 3d 292, 299 (4th Cir. 2008). The three-step approach includes: "(i) whether the disclosure occurred via a source specifically identified in the statute, (ii) whether the disclosure was made 'public' prior to the filing of the relevant complaint, and (iii) whether the public disclosure revealed 'allegations or transactions.'" *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 840 (E.D. Va. 2013); *see also U.S. ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 109 (1st Cir. 2010) ("The first three parts of this inquiry ask: (1) whether there has been a prior, public disclosure of fraud; (2) whether that prior disclosure of fraud emanated from a source specified in the statute's public disclosure provision; and (3) whether the relator's qui tam action is "based upon" that prior disclosure of fraud.").

First, as to whether or not the disclosure occurred via a source specifically identified in the statute, the Court finds that it did. Section 3730(e)(4) defines "public disclosure" as allegations or transactions (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accounting Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media." 31 U.S.C. § 3730(e)(4). In *Grayson v. Advanced Mgmt. Tech., Inc.*, the Fourth Circuit construed "administrative hearing" to include the filing of an administrative complaint. 221 F.3d 580, 582 (4th Cir. 2000) (finding a Federal Aviation Administration agency protest to constitute a public disclosure because "the filing was not under seal and the document was available upon request to the FAA"). Further, the Fourth Circuit held that "administrative," in the FCA context relates to the activities of governmental agencies, including documents merely received by an agency. *U.S.*

27

*ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 256 (4th Cir. 2012).  In *Jones*, the court held SEC mandatory filings "to be administrative reports because they were submitted under the SEC's administrative regulatory requirements of the company . . . and were made public by the SEC in the course of carrying out its activities as a federal agency." *Id.* at 257. Further, the Supreme Court held that the statutory list of public disclosures includes transactions that essentially "put the Federal Government on notice of a potential fraud." *Graham Cnty*, 559 U.S. at 291 (noting that this was an analysis before the 2010 Amendments but would still be interpreted the same only in the context of federal administrative complaints); *accord U.S. ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 496 (7th Cir. 2003) (noting also that "[a]dministrative reports are publicly disclosed because, by their very nature, they establish the relevant agency's awareness of the information in those reports"); *United States ex rel. Gilligan v. Medtronic*, 403 F.3d 386, 389 (6th Cir.2005).  With these factors in mind, the Court can conclude that the SBA protest likely falls under the "administrative" aspect of § 3730(e)(4).

Second, as to whether the disclosure was made 'public' prior to the filing of the relevant complaint, the Court finds that it was not.  Courts are of the agreement that for a disclosure to be "public," it must (i) be accessible to the general public; (ii) be made to strangers to the fraud; or (iii) be placed in the public domain. *Beauchamp*, 933 F. Supp. at 840; *U.S. ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist. (Wilson II)*, 777 F.3d 691, 696 (4th Cir. 2015) (noting that a public disclosure act "requires a recipient—a person, group, or entity to whom the information is revealed"); *Poteet*, 619 F.3d at 111 (holding that something is public even if there is a limited audience and that it has been publicly disclosed once it is available to the public, regardless of whether anyone reads it); *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1185 (10th Cir. 2008) (defining "public" and "disclosure" according to the

Oxford English Dictionary: Public is defined as "open to general observation, sight, or cognizance; existing, done, or made in public; manifest; not concealed;" and disclosure is defined as "the release of information or knowledge into the open[,] . . . to unclose"); *Feingold*, 324 F.3d at 495-96 (defining "public" as "accessible to or shared by all members of the community" and differentiating between discovery documents that are simply shared between litigants versus documents that are filed with the court).

When an interested party files an SBA protest, he must deliver the protest "in person, by facsimile, by express delivery service, or by U.S. mail . . . to the contracting officer." 13 C.F.R. § 125.25)(c). The contracting officer will then forward the protest to the SBA's Office of Government Contracting. *Id.* § 125.25(e). The SBA will then either dismiss the protest or notify "the protested concern" of the protest and its right to respond before making a final determination. *Id.* § 125.27(b), (c), and (d). As mentioned, the SBA denied the protest and notified the parties that they may appeal the decision pursuant to 13 C.F.R. § 134.502. ECF No. 1 attach. 7. There are no allegations before the Court that dismissed protests are published or in the public domain. It appears that dismissed protests are only circulated between the protestor, the protested concern, and the personnel in the SBA's Office of Government Contracting. *See* 13 C.F.R. § 125.25(e).

In *Jones*, the SEC found that SEC filings provided only from the entity to the agency were in the public domain: "[T]he SEC forms in question were requested, received, made public, and presumably included in any corporate profiles compiled by the agency." 469 F. App'x at 257. Further, the filings provided enough notice of the fraudulent transactions "from which an investigation could have begun," thereby permitting "strangers to the fraud" to have access to the documents. Though the SBA protest included information from which an investigation could

have begun, the information was only available to the SBA and was never exposed to the public or in the public domain.[9]   Providing documents solely to a government official without any further act by the official that makes the document public is not considered to be publicly disclosing the material. *See Wilson II*, 777 F.3d at 697 (holding that "a public disclosure requires that there be some act of disclosure *outside of the government*") (emphasis in original); *U.S. ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 42 (D.C. Cir. 2014) ("The government's own, internal awareness of the information is not one such channel . . . through which information can be made public for purposes of invoking the bar."); *Meyer*, 565 F.3d at 1200 (finding that when information is disclosed only to a government employee it is considered a private disclosure).   It was never "made public by the [agency] in the course of carrying out its activities as a federal agency." *Jones*, 469 F. App'x at 257.   The only investigation that could have begun with

---

[9] There is some question as to whether the SBA protest is considered to be in the public domain because it could be requested through a public records request, such as through the Freedom of Information Act ("FOIA"). In *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, the Supreme Court extended the meaning of public disclosure to include those documents or reports that are disclosed in a FOIA response. 131 S. Ct. 1885, 1888 (2011). In *Schindler Elevator*, relators filed a *qui tam* action based on information they received from the Department of Labor in response to three FOIA requests. *Id.* at 1890. The Supreme Court analyzed the meaning of "report" under the FCA's public disclosure bar and concluded that *responses* to FOIA requests were publicly disclosed reports, barring any further FCA claim based on the same allegations. *Id.* at 1890-91. Unlike in *Schindler Elevator*, Relator did not get its allegations from a response to an SBA FOIA request. In fact, no documents in this case were FOIA'ed. However, it is likely that a stranger to the fraud could make a FOIA request for dismissed SBA protests and then bring a FCA action. The question for the Court then becomes, are unrequested documents that one could theoretically obtain by making a FOIA request considered publicly disclosed documents for the purposes of the FCA public disclosure bar? This Court finds that they are not and declines to extend *Schindler Elevator* further.

The Court's reasoning comes from the fact that the Supreme Court in *Schindler Elevator* noted that the Court was "not troubled by the different treatment" when it came to addressing the relators' argument that "unrequested records are not covered by the public disclosure bar." *Id.* at 1888. Further, in *Wilson II*, the Fourth Circuit addressed whether a document was subject to the public disclosure bar "because it would have been 'available' to the public via a public records request." 777 F.3d at 698. The court found that it would not, noting that there is a difference "between information theoretically or potentially available—upon request—and information affirmatively provided to others not previously informed thereof." *Id.* at 699 (internal quotations omitted). The court also characterized equating documents that were "eligib[le] for disclosure with disclosure itself . . . [as] plac[ing] the cart before [the] horse." *Id.*; *see also U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 (9th Cir. 2009) *overruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) ("[A] public disclosure is restricted to information that is actually made public as opposed to material that is 'only theoretically available upon the public's request.'"). Thus, though the SBA protest may be FOIA'ed, there are no allegations or evidence that it was in this case and therefore it was not publicly disclosed on those theoretical grounds.

Relator's SBA protest would have been internal to the agency, inhibiting any stranger to the fraud from accessing the information.

Therefore, since no public disclosure occurred in this case, the claim is not subject to the public disclosure bar and the Court does not need to dismiss the claim. *See Grayson*, 221 F.3d at 582 (citations omitted) ("Dismissal of this suit was proper if the qui tam complaint was 1) based upon information 2) that was publicly disclosed and 3) [the relator is] not the original source of this information."); *U.S. ex rel. May v. Purdue Pharma L.P.,* 737 F.3d 908, 916 (4th Cir. 2013) *cert. denied*, 135 S. Ct. 2376 (2015) (discussing how the 2010 FCA amendments made the public disclosure bar no longer jurisdictional and instead permit the court, where applicable, to dismiss the action unless opposed by the government). Further, regarding the Defendants' argument that Relator did not comply with the § 3730(e)(4) procedural requirements for claims based on public disclosures, there is no need to assess such compliance or lack thereof and whether there is any basis for asserting that the purpose of the statute was incurably frustrated because, without a public disclosure, no § 3730(e)(4) requirements were triggered.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned recommends that the Defendants' Motion to Dismiss, ECF No. 87, be **DENIED**.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date

this report and recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a de novo determination of those portions of this report and recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this report and recommendation to the counsels of record for the Relator, the Defendants, and the Government.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 18, 2015