UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

A1 PROCUREMENT, LLC,

     Relator,

    v.                          ACTION NO: 2:15cv15

THERMCOR, INC., et al.,

     Defendants.

## OPINION AND FINAL ORDER

On November 3, 2011, the Relator filed its original <u>qui tam</u> Complaint in the United States District Court for the Southern District of Florida. ECF No. 1. The Complaint alleges that the Defendants made false statements and claims to the Small Business Administration ("SBA") about their "Service-Disabled Veteran-Owned Small Business" ("SDVOSB") status. <u>Id.</u> ¶¶ 51-67. On May 21, 2014, the Relator filed its First Amended Complaint ("Amended Complaint"), which added allegations relating to Defendants' involvement in the SBA's 8(a) Minority Sole-Source Program. ECF No. 25, ¶¶ 65-86.

### I.

On January 15, 2015, the Southern District of Florida transferred venue to the Eastern District of Virginia. ECF No. 57. On September 26, 2016, Thermcor filed the Defendants' Combined Motion to Dismiss and for Summary Judgment ("Defendants' Combined Motion"). ECF No. 155. On

October 10, 2016, the Relator filed a Memorandum in Opposition ("Relator's Opposition Response"). ECF No. 164. On October 17, 2016, the Defendants filed their Reply ("Defendants' Reply"). ECF No. 169. On September 29, 2016, A1 Procurement, LLC, filed its Motion for Partial Summary Judgment ("Relator's Motion") and accompanying Memorandum in Support. ECF Nos. 158, 159. On October 14, 2016, the Defendants filed a Memorandum in Opposition ("Defendants' Opposition Response"). ECF No. 168. On October 20, 2016, the Relator filed its Reply ("Relator's Reply"). ECF No. 170.

On October 21, 2016, this court referred the above motions to United States Magistrate Judge Douglas E. Miller, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motions. ECF No. 171. A hearing on the Motions was held on November 2, 2016, before the Magistrate Judge. See Transcript, ECF No. 183. The Magistrate Judge issued a Report and Recommendation ("R&R") on April 4, 2017. ECF No. 186. The Magistrate Judge recommended that the court grant in part the Defendants' Combined Motion, deny the Relator's Motion, and dismiss the case. R&R at 2. By copy of the R&R, the parties were

advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. The Relator filed Objections on April 18, 2017. ECF No. 187. The Defendants filed a Response to the Objections ("Response") on May 2, 2017. ECF No. 189.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court shall review the record in its entirety, and shall make de novo determinations of those portions of the R&R to which the Parties have specifically and properly objected. Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendations made by the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

## II.

Additionally, on April 26, 2017, the United States filed a Statement of Interest. ECF No. 188. The United States did not seek leave of court prior to filing its Statement of Interest. Under Local Civil Rule 7(F), any briefs or written communications beyond those specified in the rule may not "be filed without first obtaining leave of Court." The Defendants have asked that this court construe part of their Response as a Motion to Strike the Statement of Interest. Resp. at 1, n.1.

Regardless of how the Statement of Interest should be construed—as an amicus curiae submission or as an objection to

the R&R—it is arguably untimely. Although the parties did not provide, and the court could not locate, any controlling authority, district courts have looked to Rule 29 of the Federal Rules of Appellate Procedure for guidance on timeliness of amicus curiae submissions. See U.S. ex rel. Gudur v. Deloitte Consulting LLP, 512 F. Supp. 2d 920, 927 (S.D. Tex. 2007), aff'd sub nom. U.S. ex rel. Gudur v. Deloitte & Touche, No. 07-20414, 2008 WL 3244000 (5th Cir. Aug. 7, 2008). Rule 29 provides that an amicus curiae submission must be filed "no later than 7 days after the principal brief of the party being supported is filed." Fed. R. App. P. 29(a)(6). If the court considered the Relator's Objections to be a principal brief under that rule, the time for an amicus curiae submission would have expired on April 25, 2017. If the court considers the Statement of Interest to be akin to an objection to the R&R, it is also untimely, because it would have been due fourteen days after the R&R was issued, on April 18, 2017.

However, the Statement of Interest is not a typical filing. It was not filed by a formal party and it "takes no position as to the overall merits of the case." Statement of Interest at 2. These distinctions cast some doubt on the applicability of rules that were designed to deal with other types of filings. While courts have analogized similar statements to more typical filings in the past, the court is hesitant to strike a filing

4

without clear guidance from controlling legal authority. Accordingly, the court will consider the Statement of Interest as if it were an amicus curiae submission in reviewing the R&R, and exercises its discretion to extend the filing deadline by one day. As such, the court **DENIES** the Defendant's Motion to Strike.

III.

The SBA administers two programs that are relevant to this case. One is the SDVOSB Set-Aside Program and the other is the 8(a) Business Development Program.[1] The Relator alleges that, between the years of 2007 and 2015, the Defendants submitted materials to the SBA containing false certifications that misrepresented Thermcor's eligibility for those two programs.

While Thermcor never obtained any contracts under the SDVOSB program, it did make successful contract bids under the 8(a) program. The 8(a) program is designed to aid small businesses that are owned by a disadvantaged individual. The 8(a) regulatory scheme sets out various conditions, and while it provides for "early graduation" and termination processes, the SBA is tasked with determining 8(a) compliance. See, e.g., 13 C.F.R. §§ 124.101, 124.112, 124.301-04. Even after being granted admission into the 8(a) program, participants continue to make

---

[1] For a more detailed explanation of the factual background, see the R&R at 2-16.

5

annual "[s]ubmissions supporting continued eligibility." 13 C.F.R. § 124.112(b). If an 8(a) participant reaches the nine-year term limit, is "early graduated," or is terminated from the program by the SBA, it is no longer eligible to bid on or obtain 8(a) set-aside contracts, but it "is obligated to complete previously awarded 8(a) contracts." 13 C.F.R. § 124.304. All the contracts that Thermcor obtained through the 8(a) program resulted in claims for payment "made directly to the government agencies who solicited the work," and not the SBA itself.

The Fourth Circuit has summarized the test for False Claims Act ("FCA") liability: "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out or to forfeit moneys due (i.e., that involved a 'claim')." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 788 (4th Cir. 1999) ("Harrison I"). In Harrison I, the plaintiff brought an FCA claim based on a defendant's false certification "that it had complied with the conditions in order to induce the government benefit." Id. at 786.

The Supreme Court recently held that, in addition to express false certifications, "the implied false certification theory can be a basis for liability" under the FCA. Universal

6

*Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016).[2] Liability may attach under the FCA: (1) if a defendant submits a claim for payment with specific representations about the goods or services provided, and does not disclose its noncompliance with a statutory, regulatory, or contractual requirement; (2) such that the omission of the noncompliance renders its representations misleading; and (3) the misrepresentation is material to the government's payment decision. *Id.* The relevant question is "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* at 1996. This materiality requirement is "rigorous." *Id.*

A "claim" under the FCA "includes direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs." *Id.* (citing 31 U.S.C. § 3729(b)(2)(A)). "Knowing" or "knowingly" means "that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'" *Id.* (quoting

---

[2] *But see Harrison I*, 176 F.3d at 787 n.8 (Fourth Circuit previously stated that, under the FCA, the permissibility of an implied false certification claim was "questionable"); *U.S. ex rel. Herrera v. Danka Office Imaging Co.*, 91 F. App'x 862, 864 (4th Cir. 2004).

§ 3729(b)(1)(A)). "Material" means "'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" Id. (quoting § 3729(b)(4)).

Importantly, the FCA is limited in scope and is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations." Id. at 2003. It is insufficient "that the Government would have the option to decline to pay if it knew of the defendant's noncompliance," and, if the "noncompliance is minor or insubstantial," there can be no materiality. Id. However, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." Id. at 2003-04.

## IV.

The Magistrate Judge concluded that, viewing the facts in the light most favorable to the Relator, "Thermcor's conduct falls outside the scope of FCA liability because it did not receive payments on any SDVOSB contracts, and its eligibility certifications, whether false or not, did not relate to the goods or services provided to the Government." R&R at 19. The Magistrate Judge further concluded that "the certifications were not otherwise material to the Government's decision to pay the claims Thermcor made . . . ." Id. The Magistrate Judge recommended that the court grant in part the Defendants'

Combined Motion and deny the Relator's Motion, because "the undisputed facts show that Thermcor is entitled to judgment as a matter of law." Id. The Relator has filed four (4) objections to the R&R. The court will address the objections in turn.

## A. First Objection

The Relator's first objection involves the threshold-level applicability of the FCA to the circumstances at hand. The Relator objects that "[t]he Magistrate Judge erred in holding that fraudulent statements on applications and renewal application[s] submitted to gain eligibility to government set-aside programs are not actionable under the FCA." Obj. at 2. This objection is meritless. The court finds it necessary to point out that the Magistrate Judge did not make that finding. The Magistrate Judge did, however, conclude that under these circumstances, the allegedly false statements made on Thermcor's 8(a) renewal applications are not actionable under the FCA. See R&R at 37-46. The court agrees with the Magistrate Judge.

The Relator argues that Thermcor expressly certified its regulatory compliance to the SBA in its 8(a) submissions, and that those allegedly false certifications are actionable under the FCA. Obj. at 5-6. As the Magistrate Judge pointed out, the fact that Thermcor's express certifications of 8(a) compliance were made to the SBA and not the Navy, Coast Guard, or other contracting agencies is significant. See R&R at 32. The

9

Defendants did not seek payment from the SBA, and, thus, their submissions to the SBA were not claims for payment. The Magistrate Judge's statement that Thermcor's annual renewal applications were "not claims for payment," R&R at 39, is accurate. The only "claims for payment" were the claims for payment that Thermcor submitted to contracting agencies, and it is those claims that are theoretically actionable under the FCA. That is not to say that false eligibility certifications are always outside the scope of the FCA, and, contrary to the Relator's Objections, the Magistrate Judge made no such assertion.[3]

The Relator repeatedly emphasizes, through various citations to cases that are not binding on this court, and most of which were considered by the Magistrate Judge, that Thermcor's false statements to the SBA are actionable under the FCA. Obj. at 3-5; see generally R&R at 31-40. The Relator theorizes that, because 8(a) program participation was required for the contracts obtained by Thermcor, any false statements Thermcor made to the SBA in pursuit of remaining 8(a) certified are, transitively, false statements made on future claims for

---

[3] Although, if the Defendants had never actually obtained or performed an 8(a) contract, and thus never made a claim for payment, as was the case with the SDVOSB contracts, see R&R at 35, none of their submissions to the SBA could have been actionable under the FCA.

payment. However, the Relator's efforts at wordsmithing and analogy do not persuade the court to reject its notions of common sense. Thermcor was an 8(a) participant <u>because the SBA said it was</u>. Certification, renewal, and, consequently, general participation in the 8(a) program, are discretionary SBA decisions that cannot be revoked by the Relator's competing interpretation of what the 8(a) regulatory scheme requires.

Although the Relator argues that it pled facts supporting fraud-in-the-inducement with respect to Thermcor's claims for payment on 8(a) contracts, Obj. at 5 n.3, the court agrees with the Magistrate Judge that the Relator did not adequately plead a fraud-in-the-inducement theory of liability. <u>See</u> R&R at 33 n.14. Simply using the word "induce" in its Amended Complaint is insufficient. Never in the Amended Complaint does the Relator allege facts concerning Thermcor's initial 8(a) eligibility. Further, while the Relator appears to argue that each renewal submission by Thermcor "induced the government to enter into that year's contracts," Obj. at 5 n.3, the Relator provides no explanation or timeline to support that assertion. A company's 8(a) status is one of inertia; it continues until termination or graduation. Even if Thermcor had failed entirely to make its renewal submissions, there is no indication that it would be automatically terminated. On the contrary, while termination is permissible following "a pattern of failure to make required

11

submissions," it is not mandatory. <u>See</u> 13 C.F.R. § 124.303(a)(7). Accordingly, describing each of an 8(a) participant's annual SBA submissions as a new inducement to contract, simply because the regulations require updated documentation each year, is a logical stretch. The court has no basis to find that various contracting agencies might have been induced to contract with Thermcor because of the contents of its renewal submissions, and the court is not persuaded by the Relator's "continuing inducement" argument.

The Relator also argues that, in making its ultimate claims for payment under 8(a) contracts, Thermcor impliedly certified itself as 8(a) compliant by representing itself as an 8(a) participant. <u>See</u> Obj. at 4-6. But, as the Magistrate Judge stated, the only way to define an 8(a) certified business is by reference to the certification procedures outlined in the regulatory scheme. R&R at 39. Those certification procedures provide the SBA with a great deal of discretion. Quite simply, an 8(a) business is a business that participates in the 8(a) program. Thermcor participated in the 8(a) program. Therefore, Thermcor was an 8(a) business. Because Thermcor was an 8(a) business, no "false statement [was] made in a transaction involving a call on the U.S. fisc," <u>Harrison I</u>, 176 F.3d at 788, when, in making its ultimate claims for payment on contracts, Thermcor represented itself as an 8(a) participant.

12

Further, contracting agencies that work with the 8(a) set-aside program limit their contracts to those businesses that are 8(a) certified, not those that are 8(a) compliant. Indeed, the SBA itself does not necessarily limit the 8(a) set-aside program to those businesses that are strictly 8(a) compliant. See 13 C.F.R. § 124.303(a)(2) (indicating that the SBA "may" terminate an 8(a) business if it fails to maintain its eligibility); cf. 13 C.F.R. § 124.201 ("Any concern or any individual on behalf of a business has the right to apply for 8(a) BD program participation whether or not there is an appearance of eligibility.") (emphasis added). Unless a contracting entity could engage in its own determination of 8(a) compliance, 8(a) compliance, in of itself, is irrelevant to eligibility to bid on 8(a) contracts. Cf. 13 C.F.R. § 124.507 (explaining that the SBA determines 8(a) eligibility). Thermcor did not make false statements when it represented itself as 8(a) certified in making its claims for payment, because it was in fact an 8(a) participant at all relevant times. The court **OVERRULES** the Relator's first objection.

## B. Second Objection

The Relator's second objection deals with materiality. The Relator argues, not only was there fraudulent conduct related to a claim for payment, but also that the fraudulent conduct was material to the government's payment decision. Obj. at 7-8. The

13

Relator asserts that "the alleged false statements were material despite Thermcor's continued enrollment in the 8(a) program while being investigated." Id. at 6.

The Relator argues that the Magistrate Judge's comment that "false statements had 'no bearing on the actual ship-repair services Thermcor performed' . . . does not support a finding of immateriality." Id. (quoting R&R at 40). First, in that part of the R&R, the Magistrate Judge simply listed two types of false statements as "example[s]" of issues that "had no bearing on the actual ship-repair services Thermcor performed." R&R at 40. Second, it is true that any false statements had no such impact, and it matters that they did not, because otherwise, they would likely be material. Moreover, because the 8(a) renewal applications were not claims for payment, despite the Relator's protests to the contrary, whether Thermcor's statements to the SBA were <u>material to the SBA's 8(a) certification</u> is the wrong question. The correct question is whether Thermcor's statements to the SBA were <u>material to the payment or receipt of money or property in connection with Thermcor's actual claims for payment</u>, which it made to various contracting agencies and not the SBA. The statements made by Thermcor on the 8(a) renewal applications were not "so central" to the 8(a) program that the government "would not have paid these claims had it known" of

the statements. _Universal Health Servs., Inc._, 136 S. Ct. at 2004.

In _Universal Health Services_, a mental health facility received Medicaid reimbursements for its mental health treatment services, despite the facts that "few [facility] employees were actually licensed to provide mental health counseling and that supervision of them was minimal." _Id._ at 1997. Of five different professionals who had treated one Medicaid patient, "only one was properly licensed." _Id._ Moreover, "despite regulatory requirements to the contrary," twenty-three (23) facility employees who lacked licenses provided treatment services to patients. _Id._ In its reimbursement submissions, the facility used payment codes for different treatment services. _Id._ Additionally, facility employees "misrepresented their qualifications and licensing status to the Federal Government to obtain National Provider Identification numbers, which are submitted in connection with Medicaid reimbursement claims and correspond to specific job titles." _Id._ Following complaints, Massachusetts investigated the facility, and the facility "agreed to a remedial plan." _Id._

_Universal Health Services_ did "not resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment." _Id._ at 2000. The claims submitted by the facility in that case did "more than merely

15

demand payment" and "omitt[ed] critical qualifying information,"
rendering them "actionable misrepresentations." Id. The Court
held that

> the implied certification theory can be a basis for
> liability, at least where two conditions are
> satisfied: first, the claim does not merely request
> payment, but also makes specific representations about
> the goods or services provided; and second, the
> defendant's failure to disclose noncompliance with
> material statutory, regulatory, or contractual
> requirements makes those representations misleading
> half-truths.

Id. at 2001. The Court also held that "not every undisclosed
violation of an express condition of payment automatically
triggers liability." Id.

Recently, in United States v. Triple Canopy, Inc., the
Fourth Circuit found that "the Government properly alleged an
FCA claim" where Triple Canopy was contractually required to
ensure all its employees had satisfactorily completed a United
States Army qualification course, but used "guards from Uganda
who were unable to meet this marksmanship requirement." 857 F.3d
174, 175 (4th Cir. 2017). Triple Canopy falsified qualification
documents instead of informing the Government of its
noncompliance. Id. Triple Canopy billed the Government for the
unqualified employees. Id. at 176. Unlike the defendant in
Universal Health Services, Triple Canopy did not make a
"specific representation" in its invoices, and the invoices
"contained no falsities on their face." Id. at 178. However,

Triple Canopy did request payment from the Government for employees that it knew were unqualified under the contract. Id. Unlike "guns that do not shoot" or "guards that cannot shoot straight," id. at 179, any false statements made by Thermcor had no impact on the services it provided.

The Relator asserts that the Magistrate Judge's statement that "the SBA was aware of the conduct and consistently retained Thermcor in the 8(a) program" was incorrect. Obj. at 7 (quoting R&R at 41) (internal quotation marks omitted). The Relator further argues that the SBA was not aware of any false statements. Id. at 7. However, the Relator's assertions are belied by the "Letter of Intent to Early Graduate" ("Letter") that the SBA sent to Thermcor on February 10, 2016. ECF No. 159-18. The Relator itself noted that the Letter "clearly stated th[at] Thermcor was not in compliance with the net worth and affiliate eligibility requirements of the 8(a) program, which were the subject of repeated false statements on Thermcor's renewal application." Obj. at 9 (emphasis added). Yet, despite the SBA's awareness of this apparent non-compliance, the SBA did not in fact "early graduate" or terminate Thermcor from the 8(a) program. Allowing Thermcor to maintain its 8(a) status had significance, as its continued certification status could have even allowed it to obtain new 8(a) set-aside contracts, despite the SBA's knowledge of a lack

17

of compliance with the regulatory scheme. See Letter at 1-3
(indicating that ineligibility to obtain new 8(a) contracts
begins on the date of early graduation).

The Relator further objects that "the Magistrate Judge
substituted the conclusion of the SBA's investigation for the
judgment of the [c]ourt." Obj. at 8. However, in order to obtain
set-aside contracts under Section 8(a), there is a requirement
of 8(a) certification by the SBA and the SBA alone. This
"certification" must mean something. Otherwise, it would be
senseless to require SBA certification for 8(a) companies while,
say, permitting self-certification for other small disadvantaged
businesses.[4] Because the SBA has discretion both in certifying
and graduating or terminating 8(a) companies, the court cannot
determine, through simple application of one interpretation of
the regulatory scheme, whether misrepresentations by Thermcor

---

[4] Indeed, even for those businesses which can self-certify,
SBA determinations have significance. It is clear that SBA
determinations are supposed to have some degree of finality, as
the SBA will not re-consider its previous certifications, unless
a protest presents credible evidence of a material change in
circumstances or of false or misleading application information.
13 C.F.R. § 124.1011(c). If a disadvantaged status determination
is to have any meaning, it must permit some measure of reliance;
the alternative is that the determination is not a determination
at all, but a guess that provides no finality for either the
business or the contracting party. Cf. 13 C.F.R. § 124.1013(h)
(describing the "[r]esults of an SBA disadvantaged status
determination," which "becomes effective immediately," and
automatically permits the award of contracts to protested
concerns).

would be material to the SBA's decision. The SBA's retention of Thermcor in the program, despite the compliance concerns detailed in the Letter, makes this conclusion apparent. The benefit provided to 8(a) participating companies would be compromised if, after the SBA made a discretionary determination of whether they were eligible for the program, the participant risked being dragged into court on an FCA claim simply because a competing company disagreed with the SBA's decision.

The court does not articulate these policy considerations, however, to say that the court could not determine that representations like these were fraudulent. Nevertheless, for recovery in a _qui tam_ action under the FCA, it is not enough that the actions may have been fraudulent; they must be material to the claim for payment. In the case-at-bar, there is a regulatory mechanism providing for the SBA to use its discretion in evaluating subjective factors. FCA liability here would interfere with other regulatory mechanisms and compromise their policy goals. Action by the SBA is discretionary under the regulatory scheme, and it is probably so-designed with the intention that businesses owned by disadvantaged individuals who fail to dot every "i" and cross every "t" will not automatically be removed from the program. It would frustrate the policy objectives of the 8(a) program and the purposes of the FCA, if the court manipulated a regulation that vests the SBA with

19

discretion and molded it into a rigid test that deems an 8(a) participant's conduct to be in violation of the FCA, whenever the company fails to comply with a competing business's interpretation of the regulatory scheme and subsequently makes a claim for payment. The court **OVERRULES** the Relator's second objection.

## C. Third and Fourth Objections

The Relator objects that "the Magistrate Judge erred because partial summary judgment should be entered in favor of A1." Obj. at 11. The Relator also objects "to the Magistrate Judge's recommendation to grant summary judgment regarding the alleged defrauding of the SDVOSB program." Id. These general objections "'simply reiterate arguments raised before the [M]agistrate [J]udge,'" and should be "treated as waivers or failures to object." Kearson v. Colvin, No. 2:15cv172, 2016 WL 4318968, at *2 (E.D. Va. Aug. 12, 2016) (Morgan, J.) (quoting Hayslett v. Colvin, No. 7:14cv631, 2016 WL 1296080, at *2 (W.D. Va. Mar. 30, 2016)). Accordingly, the court will not discuss them further. However, the court notes that it has reviewed de novo the full record in this case, together with the Magistrate Judge's recommendations with respect to the granting and denial of summary judgment, and agrees with the Magistrate Judge's recommendations. The court **OVERRULES** the Relator's third and fourth objections.

## V. CONCLUSION

This court, having examined the Relator's Objections to the Magistrate Judge's R&R, and having made de novo findings with respect thereto, does hereby **OVERRULE** the Objections and **ADOPT** the R&R in full. Accordingly, as requested in the Defendants' Combined Motion, ECF No. 155, summary judgment is **GRANTED** in favor of the Defendants, and the Relator's Motion, ECF No. 158, is **DENIED**. The Clerk is **DIRECTED** to forward a copy of this Opinion and Final Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

July 5, 2017